## E. F. LOVEJOY v. STATE.

No. A-3529—Opinion Filed Jan. 29, 1921.

(194 Pac. 1087.)

(Syllabus.)

1.   **HOMICIDE—Abortion Resulting in Death—Murder.** A person may be properly charged with and convicted of murder under

the third subdivision of section 2313, Revised Laws 1910, where death results to the woman in the commission of the felony defined by section 2436, Revised Laws 1910.

2.  **SAME—Manslaughter Statute.** Section 2323, Revised Laws 1910, does not have the effect of withdrawing from the operation of the murder statute a homicide resulting in the death of a woman by a person engaged in the commission of the felony defined by section 2436.

3.  **STATUTES—Adopted from Another State—Construction.** It is a familiar rule of statutory construction that, when one state adopts a statute from another state, it also adopts the construction which has uniformly been given to it by the highest courts of that state prior to its adoption.

4.  **STATUTES—Repeals by Implication.** Repeals by implication are not favored, and will not be indulged in if there is any other reasonable construction.

5.  **SAME—Specific and General Statutes.** Where a specific statute amounts merely to an exception to a general statute, all that is not clearly embraced in the specific statute remains within the scope of the general statute.

6.  **CONSTITUTIONAL LAW—Province of Legislature—Wisdom of Legislation.** The judiciary is not concerned with the wisdom of statutory enactments. We have no power to amend or repeal constitutional or statutory provisions, although we may disapprove of them. Arguments against such provisions must be addressed to the people or to the Legislature.

7.  **HOMICIDE—Dying Declarations.** For certain statements included within a dying declaration held to have been properly admitted, see body of opinion.

8.  **HOMICIDE—Instructions on Manslaughter in Second Degree.** Action of the trial court in giving to the jury an instruction upon manslaughter in the second degree, and in submitting a form of verdict conforming thereto, held prejudicial error. For reasons, see body of opinion.

*Appeal from District Court, Oklahoma County;*

*Geo. W. Clark, Judge.*

E. F. Lovejoy was convicted of manslaughter in the second degree, and appeals. Reversed and remanded.

*E. G. McAdams* and *L. D. Mitchell,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J.   The plaintiff in error, hereinafter referred to as defendant, was convicted in the district court of Oklahoma county of the crime of manslaughter in the second degree, on the verdict of the jury to that effect. Sentence was pronounced and judgment rendered on the 7th day of December, 1918; the punishment assessed in accordance with the verdict being a fine of $500 and imprisonment in the county jail for a period of 30 days.

The charging part of the information is as follows:

"* * * On the 20th day of March, A. D. 1918, in Oklahoma county, state of Oklahoma, and within the jurisdiction of this court, E. F. Lovejoy and Jesse Warren, whose more full and correct names are to your informant unknown, then and there being, did then and there willfully, unlawfully, and feloniously commit the crime of murder, in manner and form as follows, to wit:   On the 20th day of March, A. D. 1918, at and within Oklahoma county, state of Oklahoma, and within the jurisdiction of this court, the above-named defendants, E. F. Lovejoy and Jesse Warren, then and there being, did then and there unlawfully and feloniously use and employ a certain instrument, the exact kind and character of which is to your informant unknown, in and upon the body of one Ruby M. Alexander, who was then and there a pregnant woman, with intent then and there upon the part of them, the said E. F. Lovejoy and the said Jesse Warren, by the use and employment of such instrument as aforesaid, to procure the miscarriage of the said Ruby M. Alexander, the miscarriage of the said Ruby M. Alexander not being necessary to preserve the life of the said Ruby M. Alexander.

"That by the use and employment of the said instrument as aforesaid the said E. F. Lovejoy and the said Jesse Warren did procure the miscarriage of the said Ruby M. Alexander, and by reason of such miscarriage so procured as aforesaid the said Ruby M. Alexander was made mortally sick, and from said sickness so caused as aforesaid the said Ruby M. Alexander did linger, and, lingering, did die. * * *"

The trial court instructed the jury in part as follows:

"Homicide is the killing of one human being by another, and is classed as murder, manslaughter in the first degree, manslaughter in the second degree, excusable homicide, and justifiable homicide.

"In so far as affects this case, homicide is murder when perpetrated without a design to effect death by a person engaged in the commission of a felony.

"Homicide is manslaughter in the second degree when perpetrated by the act, procurement, or culpable negligence of another, under such circumstances and conditions as not to constitute either murder or excusable homicide.

"Homicide is excusable when committed by accident and misfortune in doing a lawful act by lawful means, with usual and ordinary caution and without an unlawful intent.

"There is in this case no element of either the crime of manslaughter in the first degree or of justifiable homicide; therefore you will not be burdened with definitions of either such homicides."

"The using or employing in and upon a pregnant woman of any instrument with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, constitutes a felony."

"If you shall find from the evidence, facts, and circumstances disclosed upon the trial beyond a reasonable doubt that in the fore part of the month of March, 1918, the deceased, Ruby M. Alexander, was a pregnant woman,

and that in this county and state, in said month, and prior to the 19th day of said month, the said defendant, E. F. Lovejoy, used and employed in and upon her body any instrument, with intent thereby to procure the miscarriage of the said Ruby M. Alexander, and you shall further find from such evidence, facts, and circumstances beyond a reasonable doubt that the use and employment of such instrument with intent thereby to procure such miscarriage was not necessary in order to preserve the life of the said Ruby M. Alexander, and that her death resulted from such use and employment of such instrument, you will find the defendant guilty of murder, as charged in the information."

"If, from the evidence, facts, and circumstances disclosed upon the trial, you believe that the defendant is guilty of some grade or class of homicide, and you have a reasonable doubt as to whether the offense, if any, is murder, it will be your duty to give the defendant the benefit of that doubt and acquit him of that crime."

"If you acquit the defendant of the crime of murder, you will then consider as to whether the death of the said Ruby M. Alexander was caused, in this county and state, prior to the 19th day of March, 1918, by the act, procurement, or culpable negligence of the defendant, the crime included in the charge set out in the information; and if, from the evidence, facts, and circumstances, you find beyond a reasonable doubt that her death resulted from such act, procurement, or culpable negligence as aforesaid, you will find the defendant guilty of manslaughter in the second degree."

"If, upon a consideration of all the evidence, facts, and circumstances disclosed upon the trial, you entertain a reasonable doubt either, first, as to whether the defendant used and employed in and upon the body of the said Ruby M. Alexander any instrument, with intent thereby to procure the miscarriage of the said Ruby M. Alexander, as charged in the information, or, second, if he did use such instrument with such intent, as to whether such use and

employment was necessary in order to preserve the life of the said Ruby M. Alexander, or, third, if he did use such instrument with such intent, as to whether her death resulted from such use and employment of such instrument, you will return a verdict of not guilty."

"Under the law a person found guilty of murder shall suffer punishment of death or life imprisonment at hard labor in the state penitentiary, in the discretion of the jury. If you find the defendant guilty of murder, you will assess his punishment therefor."

"The punishment for manslaughter in the second degree is imprisonment in the state penitentiary not more than four years and not less than two years, or by imprisonment in the county jail not exceeding one year, or by a fine not exceeding $1,000, or both such fine and imprisonment. If you find the defendant guilty of manslaughter in the second degree beyond a reasonable doubt, you may, if you so desire, assess the punishment therefor, to be definitely stated in your verdict."

The prosecution was instituted and the cause tried upon the theory that defendant had committed the crime of felonious homicide (murder) as defined and included within the third subdivision of section 2313, Revised Laws 1910, which provides:

"Third. When perpetrated without any design to effect death by a person engaged in the commission of any felony."

Section 2436, Revised Laws 1910, makes it a felony to produce or attempt to produce a miscarriage or abortion (with that intent) in the following language:

"Any person who administers to any pregnant woman, or who prescribes for any such woman, or advises or procures any such woman to take any medicine, drug or substance, or uses or employs any instrument, or other means

whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the penitentiary not exceeding three years, or in a county jail not exceeding one year."

Section 2323, Revised Laws 1910, defines the crime of manslaughter in the first degree upon a woman pregnant with a quick child (with intent to destroy such child) in the following language:

"Any person who administers to any woman pregnant with a quick child, or who prescribes for such woman, or advises or procures any such woman to take any medicine, drug or substance whatever, or who uses or employs any instrument or other means with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, is guilty in case the death of the child or of the mother is thereby produced, of manslaughter in the first degree."

In the trial court counsel for defendant interposed a demurrer to the information upon the following grounds:

"Comes now the defendant, E. F. Lovejoy, and presents this, his separate demurrer to the information filed and leveled against him in the above-entitled cause, and for grounds of said demurrer says:

"First. That said information fails to state facts sufficient to constitute the crime of murder under and by virtue of the laws of the state of Oklahoma.

"Second. That the facts alleged and set forth in said information show upon its face that this defendant cannot be charged, under and by virtue of the laws of the state of Oklahoma, with the crime of murder.

"Third. That the facts stated in said information do not give this court jurisdiction to require this defendant to plead to the crime of murder, or to place this defendant

upon trial charged with the crime of murder, as alleged and set forth therein."

It is the contention here, as it was below, that section 2323, *supra,* having made it only manslaughter in the first degree for one to produce, in the same manner and by the same means enumerated in section 2436, the death of a woman pregnant with a quick child (with intent to destroy such child), there was necessarily and by plain intendment taken without the operation of the third subdivision of the murder statute, supra, that class of felony defined by section 2436, *supra.* This for the reason that the kind of felonious homicide intended to be punished only as manslaughter under section 2323 is much more, heinous, both in morals and in law, than the kind resulting from the commission of the felony defined by section 2436.

Had section 2323, *supra,* never been incorporated in the statute laws of this state, there could hardly be the semblance of a basis for the contention that death resulting from the commission of an abortion, in the manner and by the means provided in section 2436, upon a pregnant woman, would not constitute murder under our statutes.

But the Legislature, in adopting the Criminal Code, has seen fit, as it had the right to do, to withdraw from the operation of the murder statute all deaths resulting from similar means and in like manner, where the abortion is performed without necessity, upon a woman pregnant with a quick child, with intent to destroy such child.

Under the Code of Criminal Procedure of this state, one charged with crime may be convicted of any lesser degree of the same crime (where the same is by law divided into degrees), or may be convicted of an offense necessar-

ily included within that charged. See sections 5922 and 5923, Revised Laws 1910.

As the specific crime defined by section 2323, *supra*, has no lower or lesser degree, it is not necessary to give consideration to that phase of the question.

Does section 2323, *supra*, however, include within its scope all kinds of felonious homicide committed upon a pregnant woman without necessity in the identical manner and by the same criminal agencies enumerated in both sections 2323 and 2436? If so, then clearly a death resulting from the commission of the felony defined by section 2436 was, beyond the peradventure of a doubt, withdrawn from the operation of subdivision 3 of section 2313, *supra*.

The question is one not without difficulty of correct solution. However, upon mature reflection and careful consideration of the statutes and of the decisions of the highest courts of other states construing the same and similar laws, the conclusion is reached that section 2323, *supra*, does not of necessity include within its scope and operation a death resulting from the commission of the felony defined by section 2436. Had the Legislature so intended, how easy it would have been to cover the same without ambiguity by adding to section 2436 a provision to the following effect:

"And in event the death of the woman or of any unborn child result therefrom, the crime shall be manslaughter in the first degree."

Such a provision added to section 2436 would have included within its scope and operation everything covered by section 2323. But the Legislature did not do that. Instead the Legislature only saw fit to withdraw from the

operation of the murder statute a death resulting either to the child or the mother from an abortion on the mother, who was then pregnant with a quick child, and with the specific intent to destroy the child.

Manslaughter in the first degree, as defined in section 2323, *supra*, may only be committed upon a woman pregnant with a quick child. All other classes of subjects are plainly excluded from the operation of the act. The intent present also must be one to destroy such child.

The felony defined by section 2436, however, may be committed upon any pregnant woman, whether she be quick with child or not. Here, then, we have a broader field of subjects for the act to operate upon. However, if death results, and the woman was quick with child, and the intent was to destroy the child, then the prosecution must be based upon section 2323, and not otherwise. The Legislature had authority to specifically define and prescribe punishment for an unlawful act resulting in death, and, when this authority is exercised, the prosecution should be under the statute specifically defining the crime.

If, on the other hand, death results to a pregnant woman not quick with child, but with intent to produce a miscarriage, the crime is still left at murder, because it falls within the scope of subdivision 3 of section 2313, Revised Laws 1910, and is not necessarily included within the scope of section 2323.

The particular statutes were evidently taken from the Dakota laws. The Supreme Court of North Dakota had occasion to construe the same prior to the adoption of our Code, and the views herein expressed, although the question here involved never seems to have been directly raised,

are consonant with the conclusions of that court in the following cases: *State v. Belyea*, 9 N. D. 353, 83 N. W. 1; *State v. Reilly*, 25 N. D. 339, 141 N. W. 720.

The statutes of North Dakota (section 7058, Revised Code 1899; section 9462, Compiled Laws 1913, subd. 3) defining murder are identical with subdivision 3 of section 2313, Revised Laws Oklahoma 1910. Section 7065, Revised Code North Dakota 1895, the same being section 9469, Compiled Laws 1913, provides:

"Every murder perpetrated by means of poison, or by lying in wait, or by torture, or by other willful, deliberate or premediated killing, or in committing or attempting to commit any sodomy, rape, mayhem, arson, robbery or burglary, shall be deemed murder in the first degree. All other kinds of murder shall be deemed murder in the second degree."

Section 7086, Revised Code North Dakota 1899, the same being section 9490, Compiled Laws 1913, is identical with section 2323, Revised Laws Oklahoma 1910. Section 7177, Revised Code North Dakota 1899, the same being section 9604, Compiled Laws 1913, is identical with section 2436, Revised Laws Oklahoma 1910.

Both of the above-cited cases from North Dakota were prosecutions for murder in the second degree, resulting in the death of the woman in the commission of the felony defined by section 7177, Revised Code 1899, the same being section 9604, Compiled Laws 1913. In the Belyea Case the court held the information sufficient to charge the crime of murder in the second degree under said statutory provisions, but reversed the case upon other grounds; while in the Reilly Case a conviction of murder in the second degree based upon these identical statutes was sustained.

As heretofore stated, nothing was said in said opinions concerning the provisions of section 7086, Revised Code 1899, the same being section 9490, Compiled Laws North Dakota 1913, which is identical with section 2323 of our Penal Code, making it manslaughter in the first degree where the abortion is committed upon a woman pregnant with a quick child with intent to destroy such child, where death of the child or the mother is thereby produced. But the Supreme Court of North Dakota necessarily reached the conclusion that the section making it manslaughter in the first degree under the latter statute did not have the effect of withdrawing from the operation of the statute defining murder in the second degree that kind of homicide occasioned by the commission of the felony defined by section 7177, Revised Code 1899, the same being section 9604, Compiled Laws 1913.     This was the construction then placed upon the identical provisions of law here involved by the highest appellate court of the state from which they were adopted by the state of Oklahoma and prior to the adoption of such statutes by this state.

It is a familiar rule of statutory construction that, when one state adopts a statute from another state, it also adopts the construction which has been given to it by the courts of that state prior to its adoption. *State v. Caruthers,* 1 Okla. Cr. 428, 98 Pac. 474; *Barnes et al. v. Lynch et al.,* 9 Okla. 156, 59 Pac. 995; *St. L. & S. F. R. Co. v. Bruner,* 52 Okla. 349, 152 Pac. 1103; *Amsden v. Johnson,* 74 Okla. ......, 158 Pac. 1148.

It is also a cardinal rule of statutory construction, applicable to criminal statutes as well as civil, that repeals by implication are not favored and will not be indulged in if there is any other reasonable construction. 25 R. C. L. 918, sec. 169, and cases cited under note 9.

Also it has been held by the Supreme Court of this state in *Comanche v. Ferguson,* 67 Okla. 101, 169 Pac. 1075:

"Where two statutes cover, in whole or in part, the same matter, and are not absolutely irreconcilable, the duty of the court—no purpose to repeal being clearly expressed or indicated—is, if possible, to give effect to both, The construction is to be on the entire statute, and where one part is susceptible of two constructions, and the language of another part is clear and definite, and is consistent with one of such constructions and opposed to the other, that construction which will render all sections of the statute harmonious must be adopted."

Also it has been held:

"All that is not clearly embraced in an exception from the general words of a statute remains within the scope of the principal provision." *Hopkins v. U. S.,* 235 Fed. 95, 148 C. C. A. 589.

Applying the above rules of statutory construction to the question before us, the conclusion is reached that a person may be properly charged with and convicted of murder under the general murder statute of this state where death results to the woman in the commission of the felony defined by section 2436, *supra;* this for the following reasons: (1) Because such was the construction placed upon said statutory provisions by the highest court of the state from which said provisions were borrowed prior to their adoption by this state; (2) because said construction gives life and force to all the statutory provisions here involved. To construe such provisions otherwise would be to hold that section 2323, supra, by necessary implication had the effect of repealing and rendering inoperative the general murder statute which otherwise would operate and be effective where death resulted from the commission of the

felony defined in section 2436, *supra*. This construction should not be adopted for the evident reasons that repeals by implication are not favored, and further that, while the statutes relate in part to the same subject-matter, they are not absolutely irreconcilable, and that construction should be adopted which will render all the sections of the statute harmonious; further, for the reason that section 2323 amounts only to an exception from subdivision 3 of section 2313, and withdraws from the operation of the general murder statute only that class or kind of felony where death results from the production or attempt to produce an abortion upon a woman pregnant with a quick child. That class of felonies, therefore, not clearly embraced in such exception must be construed to remain within the scope of the general statute.

We quote from the brief of the Assistant Attorney General as follows:

"This statute (section 2323) by clear implication takes the crime of causing death by procuring an abortion out of the class designated as murder (perpetrated by a person engaged in the commission of a felony) and makes it a felony of a lower grade—'abortion' in one case, and 'manslaughter' in the first degree in another, according to whether or not the crime was committed upon a woman quick with child.

"This principle was announced in the cases of *Commonwealth v. Railing*, 113 Pa. 37, 4 Atl. 459, and *Montgomery v. State*, 80 Ind. 338, 41 Am. Rep. 815."

While this court has great respect for the learning and ability of the Assistant Attorney General, we cannot concur in the conclusion reached that section 2323 "by clear implication takes the crime of causing death by procuring an abortion out of the class designated murder (perpe-

trated by a person engaged in the commission of a felony) and makes it a felony of a lower grade." Nor do we think that the cases cited in support of the assertion sustain the assertion. In the case of *Commonwealth v. Railing, supra,* the court was construing a statute more comprehensive than section 2323, *supra,* as is shown from the body of the opinion, from which we quote as follows:

"In *Railing v. Com.,* 16 Wkly. Notes Cas. 452 (S. L. 1 Atl. Rep. 314), the unlawful acts charged were presented under an indictment of another form. We reversed that judgment for error in admitting certain declarations in evidence. The indictment then charged the defendant with having administered a drug to Annie Foust with intent to produce a miscarriage, and that her death resulted as a consequence of so administering it. That indictment was framed under the eighty-seventh section of the Criminal Code of March 31, 1860. It declares, if any person shall unlawfully administer to any woman, pregnant or quick with child, or supposed and believed to be so, any drug, poison, or other substance whatsoever, or shall unlawfully use any instrument or other means whatsoever, with the intent to procure the miscarriage of such woman, and such woman or any child with which she may be quick shall die in consequence of either of said unlawful acts, the person so offending shall be guilty of felony, and shall be sentenced to pay a fine not exceeding $500, and to undergo an imprisonment by separate or solitary confinement at labor not exceeding seven years. Section 183 of the same Code declares, in all cases where a remedy is provided or duty enjoined or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of said acts shall be strictly pursued, and no penalty shall be inflicted or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect.

"Thus section 87 took the crime therein specified out

of the class designated as murder, and made it a felony of lesser grade, and prescribed the punishment therefor. Hence no penalty therefor shall be inflicted or anything be done in punishment thereof otherwise than as directed by said section."

In the case of *Montgomery v. State, supra,* the Supreme Court of Indiana also was construing a statute more comprehensive in its effect than section 2323, *supra,* as is evident from the body of the opinion in that case, from which we quote as follows:

"Appellant was tried and convicted upon a count in an indictment charging him with a violation of section 1923 of the R. S. of 1881. That section reads thus: 'Whoever prescribes or administers to any pregnant woman, or to any woman whom he supposes to be pregnant, any drug, medicine, or substance whatever, with intent thereby to procure the miscarriage of such woman; or, with like intent, uses any instrument or means whatever, unless such miscarriage is necessary to preserve her life—shall, if the woman miscarries or dies in consequence thereof, be fined not more than five hundred dollars nor less than fifty dollars, and be imprisoned in the state prison not more than fourteen years nor less than three years'."

A careful perusal of the statutes construed in the two cases last above referred to discloses that the statutes there considered cover a death which would result to the woman or to an unborn child included within both sections 2323 and 2436 of our Code, while section 2436 of our Code is not intended as a homicide statute, and no punishment will lie thereunder for any death resulting. If our statute making it manslaughter in the first degree (section 2323) was as broad as either the Pennsylvania or Indiana statutes, there would be no question but that the Legislature, having covered the entire subject-matter of a death resulting from an abortion or attempted abortion, thereby substitu-

ted a specific statute and necessarily included within its scope matters which otherwise would have been included within the general murder statute (subdivision 3, sec. 2313, *supra*).

The rule of statutory construction applicable to such a situation may be stated as follows: That where a statute covers the whole subject-matter of an act, and it is evident that it was intended to be a substitute for such act, although it contains no express words to that effect, the provisions of the act operate as a repeal to the extent to which the former or general act is revised and supplied.

The statutes before us are contemporaneous statutes; they were adopted into our Code from the laws of Dakota at the same time. In construing such statutes, they must be construed *in pari materia,* as they relate partly to the same subject. Under such circumstances, the courts will exhaust all the resources of interpretation before coming to the conclusion that there is an irreconcilable repugnancy between them, and that one repeals the other by implication only. 25 R. C. L. 931, sec. 180.

Furthermore, it is clearly indicated in the body of the opinion in *Montgomery v. State, supra,* by Chief Justice Elliott, that, were there no statute (the condition existing in this state) expressly defining the offense, there could be a prosecution under the general homicide statute, provided, of course, such statute or statutes were broad enough to include the same. Judge Elliott says:

"It is clear that, if there were no statute expressly defining the offense of which the appellant was convicted, he might, upon the theory that the evidence established the acts charged against him, have been convicted of manslaughter. The elements of our statutory definition of

that grade of felonious homicide are present, the commission of an unlawful act, and death resulting from it. But, as we have seen, the state was bound to prosecute under the statute specifically defining the offense."

The case of *Montgomery v. State,* therefore, instead of supporting the contention that there can be no prosecution under the general homicide statute of this state, clearly supports the contrary conclusion.

In principle the case of *State v. Power,* 24 Wash. 34, 63 Pac. 1112, 63 L. R. A. 902, is also in point on this question. In that case it was held:

"That a statute making it a misdemeanor to employ means to procure the miscarriage of a pregnant woman prescribes the penalty for the offense does not take such act, when it results in death, out of the provisions of a statute making it manslaughter to kill another in the commission of some unlawful act."

In the body of the opinion it is said:

"The information was founded upon section 7042 of the statute (Ballinger's), which provides: 'Every person who shall unlawfully kill any human being without malice, express or implied, either voluntarily upon a sudden heat, or involuntarily, but in the commission of some unlawful act, shall be deemed guilty of manslaughter.'

"Another section of the statute (section 7068, Id.) makes it an offense for any person to administer to any pregnant woman whom he supposes to be pregnant any medicine, drugs, or substance whatever, or to use or employ any instrument or other means on her person 'thereby to procure the miscarriage of such woman,' unless the same is necessary to preserve her life. It is first contended that the trial court erred in refusing to sustain a demurrer to the information. The appellant calls our attention to the sections of the statute above cited, and argues therefrom that, inasmuch as the latter makes it a substan-

tive offense, punishable as such, for any person to administer drugs to, or use instruments upon, a pregnant woman for the purpose of procuring her miscarriage, such acts must be punished in the way the statute points out, under an indictment or information charging one or more of these specific acts alone, and cannot, therefore, be the unlawful acts which were intended to be included within the statute defining the crime of involuntary manslaughter. We cannot think this contention sound. The statute, it will be noticed, prescribes a punishment for doing these specific acts without regard to the effect such acts may have had upon the person operated upon. The crime is completed when the prohibited acts are committed, and their effect is not made a material inquiry. Had the statute gone farther and made a death resulting from them a substantive offense, to be punished in the manner therein prescribed, it might be contended with some force that a person committing the acts causing the death would have to be informed against under the statute and punished as the statute directs. But, as the Legislature has made the acts punishable as acts, without reference to their consequences, we cannot think it was intended to exempt a person causing the death of another by these means from being informed against and punished under the general statutes relating to unlawful homicides."

The judiciary is not concerned with the wisdom of statutory enactments, and we have no power to amend or repeal constitutional or statutory provisions, although we may disapprove of them. Arguments against such provisions must be addressed to the people or to the Legislature. *White v. State,* 4 Okla. Cr. 143, 163, 111 Pac. 1018.

The conclusion is reached, therefore, that the information in this case sufficiently charged the crime of murder under the third subdivision of section 2313, *supra,* committed in the perpetration of the felony defined by section 2436, *supra;* that the contemporaneous adoption of section

2323, *supra*, did not have the effect of withdrawing from the operation of the general murder statute a death resulting from the commission of the felony defined by section 2436; and that for such reasons also the objections of counsel to the introduction of evidence and to the instructions of the court defining murder under said provisions were not well founded.

It is also contended that the trial court erred in overruling the motion of defendant to strike from the evidence of the witness Margaret Denman certain portions of the alleged dying declaration of deceased, to wit, "The miscarriage was produced by Dr. Lovejoy, of Oklahoma City," for the reason that it was a conclusion of the witness, and again to strike out, "I was sent there by Jess Warren, of Lookeba, who is the father of the child," also "Tell Jess I more than forgive him, that I still love him," and further to strike out also that part in which the witness quoted an alleged prayer of deceased, part of which was as follows: "Yea, though I walk through the valley of the shadow of death, I will fear no evil; for Thou art with me; Thy rod and Thy staff they comfort me."

The record discloses that the trial court, in the absence of the jury, first heard the testimony of the witness Denman relative to the dying declaration of deceased and to its admissibility, at which time counsel for defendant made certain objections to the admission of the portions above quoted, which objections were overruled, and a proper exception saved. After the jury was recalled, counsel for defendant again moved to strike this alleged incompetent testimony from the record, which motion and request was denied by the trial court, and an exception saved to such ruling.

The objection that the statement, "The miscarriage was produced by Dr. Lovejoy, of Oklahoma City," was a conclusion of the witness, is, in the opinion of this court, not tenable. We consider the statement one of fact, relating to the cause of the death of deceased, and testimony such as a living witness would have been permitted to give.

Similar expressions were held to be admissible by this court in the following cases: *Blair v. State*, 4 Okla. Cr. 359, 111 Pac. 1003; *Thomas v. State*, 13 Okla. Cr. 414, 164 Pac. 995.

In the latter case it is said:

"Another matter which is complained of, and will, in all probability, likely arise on a retrial of this charge, is that the court erred in admitting that part of the dying declaration of Gammill in which he said, 'Those negroes shot me and robbed me.' It is contended that this evidence should have been excluded because it was nothing more than the opinion of the deceased, and the deceased, if living, would not have been permitted to testify to such effect. There seem to be two rules upon this question: First, the strict rule which is followed by some courts to the effect that it is indispensable that the dying declaration should consist solely of facts, and not of conclusions or opinions; and, second, the liberal one that opinion rule is not necessarily applicable to dying declarations.

"The latter rule is pointed out by this court in the case of *Blair v. State*, 4 Okla. Cr. 359, 111 Pac. 1003. The doctrine is well established in this state that matters like this should be construed liberally. This rule is laid down by Prof. Wigmore in his work on Evidence, § 1447, as follows: 'The opinion rule has no application to dying declarations. The theory of that rule (*post*, § 1918) is that, wherever the witness can state specifically the detailed facts observed by him, the inferences to be drawn from them can equally well be drawn by the jury, so that the witness'

inferences become superfluous. Now, since the declarant is here deceased, it is no longer possible to obtain from him by questions any more detailed data than his statement may contain, and hence his inferences are not in this instance superfluous, but are indispensable.'

"Numerous cases are cited in the note to this section which disclose that expressions very similar to the one here made by the deceased have been admitted, such as the following: 'He cut me for nothing.' 'He killed me for nothing.' 'I know that one of the two shot me.' 'You have killed me without cause.' 'They have murdered me.' 'He shot me down like a dog.' etc.—all of which contain certain expressions of opinion and conclusion on the part of deceased. Applying the liberal rule, therefore, which we hold to govern in this state, it is our opinion that the statement aforesaid made by the deceased in his dying declaration was admissible."

The statement, "I was sent there by Jess Warren, of Lookeba, who is the father of the child," we think was admissible in this case. Jess Warren was jointly informed against with defendant Lovejoy, charged with the commission of the crime. The evidence showed that it was Warren who made arrangements with defendant to have the alleged abortion produced; that deceased sought defendant at the request and instigation of Warren; that Warren had first been to see defendant concerning the operation; and that defendant told him that he would have to see the girl. Defendant in his own behalf as a witness admitted that Warren came to see him, and that later deceased came to his office, and that he (defendant) recognized her as the young lady Warren had referred to.

While it would be immaterial in most cases of this kind who was responsible for the pregnancy of deceased, we think in this case the evidence was proper. In view of

defendant's admissions concerning his dealings with Jess Warren and subsequently with deceased, it at least may not be said that the admission of this portion of the dying declaration operated to prejudice the substantial rights of defendant within an impartial interpretation of section 6005, Revised Laws 1910. Upon a subsequent trial of this case, if one is had, no harm could possibly result to either side by the exclusion of this statement, as it clearly had no appreciable bearing on the issues either one way or the other.

The other expressions complained of were evidently admitted upon the ground that they tended to show that deceased had abandoned all hope of recovery, and that the statements were made under a sense of impending death. We think, for this purpose, the statements were admissible.

Finally it is contended that the trial court erred in giving any instruction covering that degree of felonious homicide designated by the Criminal Code of this state as manslaughter in the second degree, over the objection and exception of defendant.

In the fourth paragraph of the instructions the court says:

"Homicide is manslaughter in the second degree when perpetrated by the act, procurement, or culpable negligence of another, under such circumstances and conditions as not to constitute either murder or excusable homicide."

And in the eleventh paragraph of the charge the court told the jury:

"If you acquit defendant of the crime of murder, you will then consider as to whether the death of the said Ruby M. Alexander was caused in this county and state, prior to the 19th day of March, 1918, by the act, procurement, or culpable negligence of the defendant, the crime included in

the charge set out in the information; and if from the evidence, facts, and circumstances you find beyond a reasonable doubt that her death resulted from such act, procurement, or culpable negligence as aforesaid, you will find defendant guilty of manslaughter in the second degree."

We believe the giving of these instructions constituted error in this case. The defendant was prosecuted under an information which charged him with the commission of murder, the result of the perpetration of a felony by him. The act of attempting to produce a miscarriage or abortion is none the less a felony, it matters not whether negligently performed, or performed with the most consummate skill known to the medical profession. Under the state's theory of the case, there could be no manslaughter in the second degree, and under the express wording of our statutes we are unable to comprehend how the element of manslaughter in the second degree can enter into the alleged commission of murder perpetrated by one engaged in the commission of a felony. Had it been an included offense, there was no evidence in this case which authorized the trial court to give the instructions here complained of. The state's case, under the view we take of the law, clearly established the crime to be murder. The evidence on the part of defendant and his witnesses, if believed by the jury, entitled him to an acquittal. There was no middle ground, either under the law or the evidence, justifying the submission of manslaughter in any of its degrees. *Allen v. State*, 16 Okla. Cr. 136, 180 Pac. 564; *Ray v. State*, 10 Okla. Cr. 403, 136 Pac. 980; *People v. Huntington*, 138 Cal. 261, 70 Pac. 284; *Johnson v. People*, 33 Colo. 224, 80 Pac. 133, 108 Am. St. Rep. 85.

Defendant as a witness admitted that he gave certain medical treatment to deceased after she had attempted to

produce an abortion upon herself; and he further admitted that he received a fee for his services, and agreed that, if deceased would go to a hospital in Oklahoma City, he would continue to treat her.

The jury evidently reached the conclusion that defendant failed and neglected to properly care for and attend deceased in his capacity of a physician; that his lack of attention and care was such as to constitute culpable negligence on his part, and was within the definition of manslaughter in the second degree as contained in the trial court's instructions.

That the action of the trial court in giving to the jury an instruction upon manslaughter in the second degree, and in submitting to them a form of verdict conforming thereto, was, under the circumstances of this case, prejudicial, we think is evident. As heretofore stated, one or the other of two results could logically, under the evidence, have been reached by the jury: (1) To convict defendant of the crime of murder; (2) to acquit him. While it is true as a general proposition, finding support in numerous authorities by this and other courts, that a person charged with murder and convicted of manslaughter will not be heard to object where it appears that under the evidence he in justness ought to have been convicted of the crime of murder, the theory being that there can be no just cause of complaint by a defendant where the verdict is more favorable to him than is justified by the evidence, it is to our minds nevertheless clear that this case does not fall within that proposition. The fact that a valid conviction of manslaughter may be had under an indictment or information for murder would not justify the submission of the question of defendant's guilt of manslaughter regardless of

the character and theory of the case.    The instructions must be applicable to the facts and to the law of the case on trial.   *New v. Terr.*, 12 Okla. 172, 70 Pac. 1012.

There being no theory, either in law or in fact, authorizing the submission of the issue of manslaughter in the second degree in this case, the defendant having been convicted thereof, without a proper basis therefor, the judgment of conviction must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DOYLE, P. J., and BESSEY, J., concur.