# EMMETT SEABOLT v. STATE.

No. A-9001.   Feb. 7, 1936.
Rehearing Denied Feb. 25, 1936.
(57 Pac. [2d] 278.)

2

Embry & Embry and Gill & Caldwell, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Lincoln county of manslaughter in the first degree, and was sentenced to serve a term of 15 years in the state penitentiary.

The record discloses a state of facts about as follows: At the time charged defendant lived on a farm near Stroud.   He had a watermelon patch across the highway from his home.   Late in the afternoon a small son of defendant reported that some one was in the watermelon patch, whereupon defendant took his shotgun and went to the scene.   The testimony for the state is in substance:

Louis Hicks testified that on the Sunday afternoon of the homicide, he, with deceased, Leonard Clark, and the two young women, Mabel Banks and Elizabeth New, went in a Ford car on a picnic. They drove on highway 66 and turned off at Salt Creek bridge, where they had a picnic lunch and then started on their return; Clark, the deceased, driving. When near defendant's house the cut-out became loose and made a loud noise; they stopped the car and deceased attempted to fix it. Witness went down the road about 50 yards, and defendant, with a shotgun, came up to him and ordered him "come here"; some conversation then ensued; defendant then walked down to the car with witness following him. There defendant said to deceased, "You come here"; deceased answered, "Go away —I'm not bothering you"; that deceased was about half-way under the car, back of the front wheels. Defendant said: "I am going to shoot you," and fired; that defendant, leaving the body where it fell, then made the two girls and the witness go with him to his house, after which he released them. They then returned to the car, picked up the body of deceased and drove into Stroud.

Elizabeth New testified she lived in Stroud, had known deceased about a year; that they had been out riding, had a picnic, and were on their way back to town; that it was about night, but the lights were not yet lit; that she and Hicks were in the rumble seat and deceased and Mabel Banks were in the front seat; that they stopped the car and deceased left the motor running and was attempting to fix the cut-out; that Hicks went up the road, witness remaining in the rumble seat, and Mabel Banks standing beside the car; she had known defendant a long time; saw him talking to Hicks, but did not hear the conversation; that defendant came to the car and said to deceased, "Get out and come up to the house"; that deceased

said, "No, sir, I haven't done anything and I am going to fix this car"; defendant said, "I will shoot you, then," and fired. That at the time deceased was on his side partly under the car. Mabel Banks (Samples) testified she was with deceased on the day he was killed; that they went with Hicks and Elizabeth New out in the country and had a picnic lunch; as they were returning the car was stopped and deceased got out to fix it; Hicks went some distance up the road; that defendant came down the road, stopped and talked to Hicks, then came on to the car with a shotgun and ordered all of them to go to his house; deceased said he got out to fix the car and was not doing anything and was not going, and started to crawl out from under the car when defendant shot him. Dr. Anderson testified he examined the body and the gunshot wound that caused death was in the back of the right shoulder.

The evidence for the defense in substance is: Defendant testified that his son told him something; that he took his gun and went to the melon patch, there found Hicks in the patch kicking melons around and stomping them; that he rushed up and asked him what he was doing there, and Hicks answered, "What in the hell do you think I am doing, I am getting some melons." Defendant ordered him to go along with him, and they walked together down the road and there discovered a car, and he asked Hicks who was with him and he pointed to the car and said, "That fellow right yonder;" that he told Hicks to stay where he was, but that Hicks followed him; that he hurried up to the car where deceased was standing and ordered him to come along with him, that deceased answered, "To hell with you, I wouldn't go with you no place," and struck at him with his left hand. Then followed:

"Q. Never mind that, tell what happened. A. He made a big strike at me with his left hand, as he did that I was holding the gun like this toward the car with my thumb on the safety (indicating), I didn't know I had my thumb on the trigger but possibly I had because I don't see how it went off. I threw the gun this way to spar the lick off and as I did this he hit the gun either with his hand or arm, I don't know which, and as he knocked me sharply to the left the boy from the patch grabbed me from toward the ditch sort of around the waist and threw us over in the weeds, and some kind of weed or something caught around my leg. He had a hold of me there from behind and as he gave me this sharp swing the gun discharged. I felt my thumb slip on the safety and the gun discharged and I saw the boy fall in front of me (indicating). And he suddenly let go of me when the gun popped."

Defendant further testified that after the shooting he marched the girls and Hicks to his house; that he did not look at deceased, but felt sure he was dead.

The wife of defendant testified she saw the car stop and saw a man get out and go to the melon patch; her son then told her husband, who took his gun and went to the melon patch, and she saw him bringing the man out; saw him go toward the car and saw another man standing by the car and shortly after heard the shot. The ten year old son of defendant testified substantially as did defendant. Defendant also introduced several witnesses who testified to his previous good character. The testimony is sharply conflicting only as to Hicks being in the melon patch at the time he was accosted and as to what took place at the car at the time of the shooting. The court instructed the law of murder, manslaughter in the first and in the second degree, excusable homicide, and also instructed on the law of self-defense, apparent danger, accidental killing, and the right of a private person to

resist a trespass. The only instructions excepted to are No. 19, in substance that verbal insults will not justify an assault and battery, and 21, relating to the right of a person to resist a trespass on his property. Defense counsel argue: First, the insufficiency of the evidence; second, error of the court in refusing permission to recall a witness to lay a predicate for impeachment; third, error in instructing on first degree manslaughter; fourth, error in giving instructions Nos. 19 and 21; fifth, misconduct of the county attorney. These assignments will be discussed in the order named.

The contention that the evidence is insufficient to sustain the judgment is to some extent touched upon by the summary of facts above stated. Defendant does not say the testimony does not sustain the judgment, but contends rather it is unbelievable; that evidence which purports to show a man of previous good character would apprehend another in his watermelon patch but would do him no harm, but would then shoot another, who had committed no trespass, under the circumstances detailed, is incredible and obviously false. Further, the testimony that deceased was working on a cut-out with the motor running was improbable, or that under such circumstances he would make a felonious assault on deceased with Hicks behind him was likewise utterly improbable. The state argues that under the evidence defendant was extremely angry and intended to arrest the entire party; that he had Hicks in custody, but when deceased refused to submit, he fired; that this is borne out by the fact that although he had shot down deceased, he made no investigation to ascertain deceased's condition, but continued his intentions and did arrest the entire party. It is true the acts of defendant were not those of a reasonable individual, but rather of one who has given away to an extreme fit

of anger, which, aggravated by the defiant attitude of deceased, caused him to fire the fatal shot. Evidence of such unnecessary homicides is not inherently improbable as shown by many cases decided by this court under a state of facts analogous to those shown here, among which may be cited, Schmitt v. State, 57 Okla. Cr. 102, 47 Pac. (2d) 199; Hare v. State, 58 Okla. Cr. 420, 54 Pac. (2d) 670. The claim of insufficiency is not tenable.

The second assignment argued, i. e., the refusal of the court to permit a witness to be recalled to lay a predicate for impeachment, arose with reference to the testimony of the witness, Elizabeth New. She was in the car and an eyewitness to the homicide. On cross-examination she was asked if she had talked to the Stroud chief of police, Van Sickles, soon after the homicide. She answered in the affirmative, and was asked if she told him the same story she had told the jury; she answered that she had not told him any of the facts, then stated she had told him that defendant killed Clark. For the defense, Van Sickles was called and stated he talked to the New girl; that she told him of the homicide. Then he was asked what she told him, to which question an objection was sustained, the court stating that no predicate had been laid for impeaching questions. Counsel then offered to prove by the witness that immediately after the killing the New girl stated that at the time defendant and his son came to the watermelon patch the witness Hicks was in the patch getting watermelons. This was objected to for the reason no predicate was laid; the objection was sustained. Defendant's counsel then asked to recall the witness New in order to lay a predicate, which request was denied. Defendant insists this was prejudicial error. It is well settled that a witness may be impeached only on material matters. The question whether or not Hicks at the time

defendant approached was in the watermelon patch cannot be said to be entirely immaterial. But since the verdict is for manslaughter, it has no particular significance. If defendant had been convicted of murder, or if Hicks had been shot instead of Clark, it would be more material. In order to find defendant guilty, the jury must have believed the shooting of Clark was done while defendant was engaged in the commission of a misdemeanor, or was the result of such provocation as reduced it from murder to manslaughter. Whether or not Hicks was in the watermelon patch when accosted by defendant would not reduce an intentional killing of Clark to any lesser degree of homicide than first-degree manslaughter. There is nothing in this point that would warrant this court in interfering with the judgment.

Under the third assignment, defendant asserts the court was not justified in giving an instruction on first-degree manslaughter; that the evidence does not establish this degree of homicide. The argument is that under the theories presented the crime was either murder or excusable homicide. That there is such a distinction between the facts shown by the evidence in this case from those cases where a contrary rule has been announced by this court in several cases as to constitute an exception. The general rule is that in a prosecution for murder, when the court submits the issue and the jury finds a defendant guilty of first-degree manslaughter, although under the law and the facts the crime is murder, yet if the defendant is convicted of a lesser degree of homicide than that shown by the evidence, no prejudice could have resulted to him since the error is in his favor. Taylor v. State, 44 Okla. Cr. 58, 278 Pac. 1117. The general rule was announced by this court after much deliberation and after a conflicting rule had crept into some of the cases.

Leseney v. State, 13 Okla. Cr. 247, 163 Pac. 965; Lovejoy v. State, 18 Okla. Cr. 335, 194 Pac. 1087. See further Irby v. State, 18 Okla. Cr. 671, 197 Pac. 526; Smith v. State, 20 Okla. Cr. 301, 202 Pac. 519, and other cases. We adhere to the rule announced in Taylor v. State, supra.

Next defendant complains of instructions 19 and 21. We deem it unnecessary to set out these instructions. No. 19 simply tells the jury that if they find and believe from the evidence that deceased used vile words and verbal insults to defendant, they would not justify the committing of a battery. This evidently is directed to the words shown by the testimony to have been used by deceased to defendant just before the shooting. They hardly fall within the definition of vile and opprobrious epithets, and certainly as a mater of law, such words, unaccompanied by an attempt by deceased to attack defendant, would not justify an assault and battery, much less a shooting. We see nothing materially erroneous in this instruction. Instruction 21 relates to the right of defendant to resist a trespass on his property; defendant insists Hicks was wholly unconnected with the shooting and that the instruction tended to cloud the issue. No doubt the court had in mind the contention or probability of argument that deceased was an accessory of any trespass by Hicks and in order to prevent a misapprehension of the jury and to enable them to understand the rights of a property owner in resisting a trespass, gave this instruction which follows the law announced in various decisions of this court. Dickinson v. State, 3, Okla. Cr. 151, 104 Pac. 923; Garrison v. State, 19 Okla. Cr. 3, 197 Pac. 517; Jackson v. State, 49 Okla. Cr. 337, 293 Pac. 567; Powell v. State, 53 Okla. Cr. 366, 12 Pac. (2d) 247; Schmitt v. State, 57 Okla. Cr. 102, 47 Pac. (2d) 199.

The final complaint is that the court erred in permitting the state to ask questions of defendant's character witnesses concerning reports or rumors of wrongful acts of defendant. Defendant used a large number of character witnesses. The state, on cross-examination, asked various witnesses if they had heard of specific instances of reported misconduct of defendant. That is, if they had heard he had shot at a woman with a shotgun; if they had heard he had attacked some boy with a claw-hammer; if they had heard about him cutting some boy with a knife. Counsel insists this deprived defendant of a fair trial, and that it is contrary to the settled rules. The asking of groundless questions insinuating that an accused has committed other crimes at other places which might tend to prejudice the jury are not to be permitted. In some instances, such conduct alone has been sufficient to require a reversal. Underhill, Criminal Evidence, § 82; Wigmore on Evidence, § 197; Id., § 988. This rule, however, is not to be confused with the right of counsel to question a character witness as to the extent of his knowledge and as going to the weight of his opinion as to what constitutes good character. This court, in Stouse v. State, 6 Okla. Cr. 415, 119 Pac. 271, 275, states the rule thus:

"As the general reputation of any person is established by the opinions of witnesses as to the general estimation of his character, it is permissible upon cross-examination of a character witness to show the sources of his information and particular facts may be called to his attention, and he may be asked if he ever heard of them. This is permissible, not for the purpose of establishing the truth of these facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given to his testimony." Carroll v. State, 24 Okla. Cr. 26, 215 Pac. 797; Pope v. State, 15 Okla. Cr. 162, 175 Pac. 727; Russell v. State, 17 Okla. Cr. 164, 194 Pac. 242; Jones

v. State, 17 Okla. Cr. 561, 190 Pac. 887; Johnson v. State, 54 Okla. Cr. 143, 16 Pac. (2d) 263.

In the instant case it cannot be said the questions propounded the character witnesses on cross-examination are a figment of the fertile imagination of the county attorney. They appear to have been propounded in good faith, for several of the witnesses answered they had heard of the incidents inquired about. Character witness McVey stated he had been told of the difficulty in which defendant was alleged to have used a claw-hammer; witness Dodd said he had heard of the shooting incident in which defendant was reputed to have shot at a woman; witness Bond stated he had heard that defendant had shot at a named woman. The cross-examination does not fall within the inhibition which forbids the asking of groundless and unfounded questions which seek to bring the accused into disrepute before the jury, but is legitimate cross-examination to test the knowledge and value of the opinion of the witnesses. Upon a consideration of the entire case, we are satisfied defendant was fairly tried.

The judgment is affirmed.

DAVENPORT and DOYLE, JJ., concur.