## JOSEPH A. BLAIR v. STATE.

No. A-288. Opinion Filed November 23, 1910.

1. INDICTMENT AND INFORMATION—Grammatical Errors. An allegation in an indictment or information that the defendant committed the crime of murder "by then and there—shoot and discharge leaden bullets," etc., where the averment should have been, "by then and there—shooting and discharging leaden bullets," is only a defect of form, a mere grammatical error, does not tend to the prejudice of the substantial rights of the defendant upon the merits, and presents no ground for a demurrer.

2. HOMICIDE—Murder—Sufficiency of Information. An indictment or information which alleges that the defendant shot the deceased with a gun, without authority of law, and with a premeditated design to effect his death, and that the death of the deceased was thereby produced, sufficiently charges the offense of murder. It is not necessary to allege in express words that the killing itself was committed with a premeditated design to effect death. The shooting resulting in death, constituted the killing.

3. INFORMATION—Defective Verification—Method of Objection. A defective verification of an information, or the total want of a verification, cannot be reached by demurrer, but can be taken advantage of only by a motion to set aside the information on that specific ground.

4. INFORMATION—Verification—Sufficiency. An information as a whole constitutes but one statement; and a verification thereof

which says that "the statement contained in the above informa-tion is true," is not defective for omitting to say that the state-ments therein contained are true.

5.   CRIMINAL LAW—Right of Accused to Copy of Indictment or Information. Under the Constitution of Oklahoma, the defendant is entitled to a copy of the indictment or information filed against him; but if he be at large so that he can go to the clerk's office, call for and examine the original accusation, and copy it if he de-sires, the state is under no obligation to make and serve a copy upon him. If the defendant be in custody and demands a copy of the accusation, the state must furnish it; but unless he de-mands it before announcing ready for trial, his right to a copy is waived.

6.   SAME—Time for Demanding Copy—Appeal—Record. The de-mand for a copy of the accusation should be made in open court before announcing ready for trial; and the fact of the demand and the court's ruling thereon should be made a matter of record, or shown by proper recitals in the case-made.

7.   INFORMATION—Allegations—Presumption of Preliminary Ex-amination. When an information is filed charging a defendant with the commission of a felony, the law presumes that the de-fendant has had a preliminary examination or has waived the same, and the information need not allege that fact. If the de-fendant contends that no preliminary examination has been had or waived, and he desires to raise the question, he must do so by a motion to set aside the information on that ground, and the burden of proof is on him.

8.   HOMICIDE—Dying Declaration—Sufficiency of Predicate. Proof that the deceased was found lying on the ground, covered with gunshot wounds and unable to move, that he stated that he was dying, and that he died within six hours thereafter, shows a sense of impending death, and constitutes a sufficient pre-dicate for the admission of his dying declaration.

9.   HOMICIDE—Dying Declaration. In response to the question, "Did you see who shot you?" the deceased in his dying declara-tion answered, "Joe Blair, from ambush. two shots." Held, that the answer on its face was a statement of fact and not a mere opinion, and was admissible.

10.   TRIAL—Verdict—Assessment of Punishment by Court. Under section 2029 of Snyder's Comp. Laws, where the jury returns a verdict of conviction, but fails to assess the punishment to be inflicted, it is the duty of the court to assess and declare the punishment.

11.   TRIAL—Misconduct of Jury. The mere fact that the trial jury and their bailiff, before the submission of the case, had their

pictures made in a group by a photographer in front of the court house, is not ground for a new trial.

(Syllabus by the Court.)

*Appeal from District Court; Caddo County; Frank M. Bailey.*
*Judge.*

Joseph A. Blair was tried for the murder of one Joseph Kearns, and was convicted of manslaughter in the first degree. From an order overruling a motion for a new trial and in arrest of judgment, he appeals. Affirmed.

*Charles Carswell* and *Gilbert & Bond,* for plaintiff in error.
*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

RICHARDSON, JUDGE. Before entering his plea, plaintiff in error, hereinafter called the defendant, filed a demurrer to the information alleging that the same did not state facts sufficient to constitute a public offense. The information charged that the defendant "did then and there commit the crime of murder by then and there unlawfully, wilfully and feloniously, without authority of law, and with a premeditated design then and there to effect the death of one Joseph Kearns, shoot and discharge leaden bullets into the body of him, the said Joseph Kearns, from a certain loaded shotgun, which he the said Joseph A. Blair then and there had and held in his hands, then and there and thereby inflicting upon the body of him the said Joseph Kearns mortal wounds, of which he the said Joseph Kearns did then and there die." The first contention is that the information is insufficient, in that it charges that the defendant committed the crime of murder "by then and there  *  *  *  shoot and discharge leaden bullets," etc., instead of alleging that the defendant committed the crime by then and there *shooting* and *discharging* leaden bullets, etc. This is a mere grammatical error, however, and is not of such character as to vitiate the information. Section 6705 of Snyder's Comp. Laws provides that: "No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be

affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits." The defect complained of is only a matter of form. The defendant and every one else of common understanding who read the indictment, or heard it read, knew therefrom exactly what was intended to be charged; and we find nothing in the defect calculated to prejudice the substantial rights of the defendant upon the merits of the case.

It is next urged that the information was defective for the reason that it did not allege that the killing itself was committed by the defendant with a premeditated design to effect the death of the deceased, citing *Holt v. Territory,* 4 Okla. 76, 43 Pac. 1083. The information charges, however, that the act of shooting which resulted in death was committed by the defendant with a premeditated design to kill, and that was sufficient. The defendant did nothing further. Death resulted from the physical effect upon the deceased of the shot thus fired, and not from any further act of the defendant; and the shooting resulting in death constituted the killing. *Holt v. Territory, supra,* does not sustain the defendant's contention, and would not be a correct statement of the law if it did.

Next it is contended that the demurrer should have been sustained because the verification of the information was defective. The body of the verification was as follows: "Personally appeared Geo. Gemmell, who being first duly sworn, on his oath says that the statement contained in the above information is true." And the defendant contends that to be sufficient the verification should have stated that the *statements* contained in the information were true. There are three reasons why this assignment is unavailing. In the first place, even if a defective verification or the total want of one could be taken advantage of by demurrer, it could not be reached by a demurrer which merely alleged that the information did not state facts sufficient to constitute a public offense. In the next place, a defective verification or a total want of one cannot be reached by demurrer, but can be taken advantage of only by

a motion to set aside the information. (*In re Talley* [*infra*] decided at this term.) And lastly, the information as a whole constituted one statement, and the defect complained of did not exist.

The information alleged that "the said Joseph A. Blair, on the 29th day of December, 1908, had a preliminary examination for the offense alleged above before B. F. Holding, County Judge of Caddo County, Oklahoma, an examining magistrate, and was by the said B. F. Holding held to answer the same"; and following that, at the foot of the page, appears the printed words, "contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Oklahoma." And the defendant contends as a further ground of demurrer that the information alleged that the defendant was held by the county judge to answer the crime charged contrary to the statutes; that is, that he was unlawfully held. The contention is without any semblance of merit; and it and some others already noticed are so palpably trivial as to induce the conclusion that the defendant's counsel do not believe that there is any real error in the record.

After the state and the defendant had each announced ready for trial, and after the jury had been empaneled and sworn for the trial of the case, the defendant objected to proceeding any further and to the introduction of any evidence by the state, on the ground that no copy of the information had been served upon him. This objection the court overruled, and the ruling is assigned as error. There was no error. Under the Constitution the defendant is entitled to a copy of the accusation, but if he be at large so that he can go to the clerk's office, call for and examine the original accusation and copy it for himself if he desires, the state is under no obligation to make and serve a copy thereof upon him. *Stack v. State, infra,* 109 Pac. 126. In such case the defendant may "have a copy thereof" whenever he wants it. But if the defendant be in custody and demands a copy of the accusation, the state must furnish it; but unless the defendant demands it before announcing ready for trial, which he did not do in this

case, his right to a copy is waived. *Miller v. State,* 45 Ala. 24; *Driskill v. State,* 45 Ala. 21; *Dean v. State,* 43 Ga. 218; *Kelly v. People,* 132 Ill. 363, 24 N. E. 56; *Abrigo v. State,* 29 Tex. App. 143, 15 S. W. 408; *United States v. Shive,* 27 Fed. Cas. No. 16278, Baldw. 510; *Howard v. State,* 37 Ark. 265; *State v. Winningham,* 10 Rich. (S. C.) 257; *People v. Warner,* 1 Wheeler Cr. (N. Y.) 140; *State v. Briggs,* 27 S. C. 80, 2 S. E. 854. If the defendant be in custody, has not a copy of the information, and desires one, his demand therefor should be made in open court before announcing ready for trial; and the fact of the demand and the court's ruling thereon should be made a matter of record, or shown by proper recitals in the case-made.

When the taking of evidence had been concluded the defendant moved the court to direct a verdict of not guilty, on the ground that the state had not proved that the defendant had had an examining trial; and the court's refusal to do so is assigned as error. The Constitution provides that no person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination. But it was held in *Canard v. State,* 2 Okla. Cr. 505, 103 Pac. 737, that the presumption is that the information was legally filed, and therefore that a preliminary examination was had or waived; and that the want of a preliminary examination or a waiver thereof must be raised by the defendant by a motion to set aside the information on that ground. An allegation in the information of the holding of a preliminary examination or a waiver thereof is therefore surplusage, and the burden is on the defendant to show that none was had and that it was not waived. This assignment, therefore, is not well taken.

The deceased, shortly after the shooting, was found by two witnesses lying on the ground, covered with wounds made by forty-seven large size shot, unable to move, and in a dying condition. They asked him what was the matter, to which he replied that he was dying. They then inquired, "Did you see who

shot you?" And he answered, "Joe Blair, from ambush, two shots." This was about five o'clock in the afternoon. The witnesses then procured a conveyance and removed the deceased to his home. On the way they met his sister, and the deceased said to her, "Come kiss me, May, I'm dying." And the deceased died that night a few minutes before eleven o'clock. These facts were given in evidence, and thereupon the court admitted as a dying declaration the deceased's answer to the question, "Did you see who shot you?" This ruling of the court is assigned as error on two grounds: first, that it had not been sufficiently shown that the deceased was under a sense of impending death at the time he made the declaration; and second, that the statement that Joe Blair shot him *from ambush* was a mere opinion or conclusion. As to the first ground, we think the evidence abundantly shows that the deceased was under the solemn conviction that death was impending. As to the second, we regard the declaration as a statement of fact and not a mere opinion. The witness said in effect that he saw who shot him; that it was Joe Blair; that the latter was in ambush, and fired two shots; and every statement contained in the declaration on its face was one of fact and not of mere opinion. Whether, if the declaration was the expression of an opinion based on personal knowledge or observation, and not a mere guess, it would have been competent, it is not necessary to decide. But see Wigmore on Evidence, sections 1447 and 1918.

The jury returned a verdict finding the defendant guilty of manslaughter in the first degree, but not fixing the punishment. Upon this verdict the court sentenced the defendant to be imprisoned in the state penitentiary at hard labor for a term of fifteen years. And it is urged that, inasmuch as the jury by its verdict assessed no punishment for the offense, the court could impose none. But sections 1 and 2 of an act of the Legislature approved May 12, 1908, (Snyder's Comp. Laws, sections 2028 and 2029) provides as follows:

"Sec. 1. In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and

shall upon request of the defendant, assess and declare the punishment in their verdict and the court shall render a judgment according to such verdict, except as hereinafter provided."

"Sec. 2. Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

The jury having failed to agree upon the punishment to be inflicted, or at least not having declared the same in their verdict, it thereupon became the duty of the court under the statute to "assess and declare the punishment and render judgment accordingly," and the court committed no error in so doing.

Lastly, it is urged that a new trial should be granted on account of misconduct on the part of the jurors. It was shown that before the taking of evidence was concluded, and before the submission of the case to the jury, the jurors and the bailiff lined up before the courthouse, and a photographer took a picture of the group. On the hearing of the motion for a new trial it was affirmatively shown that no conversation was had between the jurors and the photographer or any one else; that the jurors did not mix or mingle with the people or the people with them; and, in short, that no prejudice to the defendant resulted. This practice, however, is not to be commended; and in such cases the court should impose a fine upon the bailiff and the jurors for the violation of his admonition. But the state has affirmatively and explicitly shown that no harm resulted to the defendant in this instance, and the matter is not therefore ground for a reversal. The judgment of the lower court will be affirmed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.