# ROBERT FRANKLIN v. STATE.

### No. A-1491.   Opinion Filed April 12, 1913.

#### (131 Pac. 183.)

1. **TRIAL—Preparation for Trial—Copy of Accusation—Waiver.** Under the Constitution (art. 2, sec. 20, Bill of Rights), in all criminal prosecutions the defendant is entitled to a copy of the accusation against him; but, if he be at large so that he can go to the clerk's office, call for, and examine the original accusation and copy it if he desires, the state is under no obligation to make and serve a copy upon him. However, if he demands a copy thereof, the state must furnish it, but, unless he demands it before announcing ready for trial, his right to a copy is waived.

2. **SAME—Service of List of Witnesses—Waiver.** The defendant in a capital case may waive his constitutional right to be furnished with a list of the witnesses that will be called in chief to prove the allegations of the indictment or information, together with their post office addresses, at least two days before the case is called for trial.

3. **TIME—Computation—"Day."** A day, in legal consideration, is punctum temporis. Fractions of a day are to be disregarded in computations which include more than one day, and involve no question of priority.

4. **HOMICIDE—Manslaughter—Sufficiency of Evidence.** In a prosecution for murder, the evidence is held sufficient to support the verdict of manslaughter in the second degree, and that no error was committed on the trial.

5. **CONTINUANCE—Waiver of Right.** Where counsel for defendant in a homicide case refuses to consent to a continuance until another case on call for that day is tried, this constitutes a waiver of any right defendant may have to a continuance.

6. **WITNESSES—List of Witnesses—Residences.** Where the witnesses, whose names were indorsed on the information, were relatives and near neighbors of defendant, the words "all of Konawa, Okla.," sufficiently designated their post office addresses, within the requirement of Const. Bill of Rights, sec. 20, that defendant shall be served with a list of the witnesses together with their post office addresses.

(Syllabus by the Court.)

*Appeal from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Robert Franklin was convicted of manslaughter in the second degree, and he appeals. Affirmed.

*Crump & Fowler,* for plaintiff in error.

*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen., and *H. A. King,* for the State.

DOYLE, J. Plaintiff in error, Robert Franklin, hereinafter referred to as the defendant, was in the district court of Seminole county convicted of manslaughter in the second degree on an information charging him with the murder of Mary Gordon, and in accordance with the verdict of the jury was on August 26, 1911, sentenced to serve a term of two years in the penitentiary. To reverse this judgment an appeal by case-made was perfected.

Briefly stated, the record discloses the following facts: On September 24, 1910, there was a "supper" at the home of Jim Franklin, a brother of the defendant, attended by a number of negroes, among them Mary Gordon, the deceased, and her stepson, Manual Gordon. The defendant had some trouble at the supper with Manual Gordon, and the deceased started home, carrying a shotgun, and was overtaken by the defendant and his brother Houston Franklin, and in a scuffle for the possession of the gun the deceased was shot. She died in a few days from the effect of the gunshot wound.

E. L. Adamson testified that shortly after the deceased had started home he heard her exclaim, "Don't shoot me Houston, don't shoot me;" and then he heard the report of a gun and went to where she was. The defendant and Jesse Ross were with her, and she said that Houston had shot her.

Jesse Ross testified that he was less than 100 yards distant when he heard the shot and went to where she was, meeting the defendant, who was carrying a shotgun. While witness was there, the defendant came back and said to the deceased, "I was trying to protect you, wasn't I, Mrs. Mary Gordon?" to which she repied, "No, Robert, don't come here and

try to blab that to me, you know you held me and Houston shot me."

Henry Gordon, her husband, testified that the deceased as a dying declaration stated:

"Robert held me and Houston shot me. I know the law will have its course, but I do feel sorry for the boys, and I am hoping they won't harm them."

The defendant's sister testified that she waited on the deceased and on the day she died she said that Houston shot her and Robert held her, and sent for the defendant's mother and said to her, "She did not want the boys punished, and she did not think the boys done it on purpose, and that she would leave it in the hands of the Lord?"

The defendant, as a witness on his own behalf, testified that with his brother Houston he started home about 11 o'clock, and met the deceased on the road; that she threw the shotgun down on them and told them to stop; that they jumped off the horse they were both riding, and Houston grabbed the gun and tussled with her, and the gun went off, and the deceased grabbed him and he held her a little while and then laid her down and went back to the house and told them about it.

The record shows that Houston Franklin and the defendant were jointly charged in the original complaint, but it does not appear that Houston was apprehended.

The petition contains the usual assignments that the verdict is contrary to law and is not sustained by sufficient evidence, and that the court erred in overruling the motion for new trial. Also that the court erred in denying a motion for a continuance. However, there is nothing tending to show that the trial court abused its discretion in denying the application. The assignments relied upon for a reversal of the judgment are, in effect, that the court erred in refusing the request of the defendant that he be furnished with a list of the witnesses, together with their post office addresses, two days before said case was called for trial.

The record shows that the crime for which the defendant stood charged was committed on September 24, 1910. The defendant was admitted to bail October 6, 1910. The information was filed January 10, 1911, and indorsed thereon were the names of Henry Gordon, husband of the deceased, Jesse Ross, E. L. Adamson, and Loa Scott, sister of the defendant, and following the names the words "all of Konawa, Okla." The defendant's counsel secured the original papers in the case August 20th, and kept them until the county attorney called for them.

When the case was called for trial August 23, 1911, the defendant objected to going to trial without a list of the witnesses, together with their post office addresses. During the afternoon session, the county attorney in open court, in the presence of the defendant and his counsel, entered the post office address of each witness on the information, and the case was continued until 9 a. m., August 25th, at which time the objection was renewed on the ground that two full days had not elapsed, and the defendant was thereby deprived of his constitutional right, as guaranteed by section 20 of the Bill of Rights providing that:

"In capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief to prove the allegations of the indictment or information, together with their post office addresses."

A day, in legal consideration, is *punctum temporis;* fractions of a day are to be disregarded in computations which include more than one day, and involve no question of priority. Section 2962, Comp. Laws 1909 (Rev. Laws, 2942).

However, the record shows that the court offered on August 25th to pass the case until a homicide case that was on call for trial that day, was tried, but the defendant's counsel refused to consent. This constituted a waiver of any right the defendant might have to further continuance.

In case of *Blair v. State,* 4 Okla. Cr. 359, 111 Pac. 1003, this court held:

"Under the Constitution of Oklahoma, the defendant is entitled to a copy of the indictment or information filed against him; but if he be at large so that he can go to the clerk's office, call for, and examine the original accusation, and copy it if he desires, the state is under no obligation to make and serve a copy upon him."

See also, *Stouse v. State,* 6 Okla. Cr. 415, 119 Pac. 271.

The provision of the Constitution referred to does not, as counsel contend, state that, "Defendant shall be served with a copy containing a list of witnesses with their post office address," but states that,

"He shall be furnished with a list of the witnesses that will be called in chief to prove the allegations of the indictment or information, together with their post office addresses."

The courts have no power to deprive a defendant of this right. However, the right is one that may be waived; and, while a defendant in a capital case is not to be presumed to waive any of his rights, yet where such right is largely for his benefit, or in the nature of a personal privilege, the law is well settled that the defendant may waive such right. *Starr v. State,* 5 Okla. Cr. 440, 115 Pac. 356. A defendant may plead guilty and thus deprive himself of one of the most valuable rights secured to the citizen—that of a trial by jury. If he can expressly admit away the whole case, then it follows that he can admit away a part of it, but he will not be presumed to have done so. Courts should see that the defendant is protected in all his rights, and no waiver should be implied unless the facts are such to clearly justify it.

In this instance the witnesses whose names were indorsed on the information were the relatives and near neighbors of the defendant, and the words "all of Konawa, Okla.," sufficiently designated their post office address, and if there was any irregularity it affirmatively appears that the defendant expressly waived it. We think the technical objections made are obviously destitute of merit.

To convict of manslaughter in the second degree, it is not necessary to show an intent to kill. It is sufficient to show an

unlawful killing, and we think the evidence is ample to support the verdict.

Having examined each of the assignments argued, and finding no prejudicial error in the record, the judgment of the district court of Seminole county is affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.