## WM. CRISP v. STATE.

No. A-3282.    Opinion Filed April 28, 1920.

Rehearing Denied June 5. 1920.

(189 Pac. 1087.)

(Syllabus.)

1. **JUDGMENT AND SENTENCE—Assessment of Punishment— When Duty of Court.** Where the jury finds the defendant guilty and is unable to agree upon the punishment, and so says in its verdict, it is the duty of the trial court to assess and declare the punishment and render judgment accordingly.

2. **HOMICIDE—Conviction of Manslaughter—Sufficiency of Evidence.** A judgment of conviction will not be reversed by this court in the absence of errors of law when there is proof tending reasonably to support the judgment rendered.

*Appeal from District Court, Okmulgee County;*

*Ernest B. Hughes, Judge.*

William Crisp was convicted of manslaughter in the first degree, and appeals. Affirmed.

*E. M. Carter, G. W. P. Brown,* and *R. Emmett Stewart,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, William Crisp, hereinafter called defendant, was informed against for the murder of Wilkie Gains, convicted of manslaughter in the first degree, and sentenced to imprisonment in the penitentiary at McAlester for a term of ten years. To reverse the judgment rendered, he prosecutes this appeal.

The evidence shows that the deceased came to his death from gunshot wounds inflicted upon him by the defendant; that on the morning of the homicide, and shortly before, the deceased and the defendant were at dipping vats near Bartlett, and engaged in a dispute in regard to the defendant putting in a certain pasture about 50 or 60 head of cattle which the defendant was having dipped; that the dipping of the cattle was completed, and the defendant, driving the cattle, left the vats and was going in the direction of the pasture, which was about one-half mile distant; that the deceased also left the dipping vats and proceeded in the same direction as that taken by defendant; that the deceased arrived at the gate of the pasture in advance of the defendant.

The evidence was in conflict as to what occurred immediately preceding and at the time of the homicide, there being evidence on the part of the state that the defendant went to the gate of the pasture, where the deceased was standing, having in his hand a pistol; that thereafter deceased drew his pistol, and the defendant fired one shot

and deceased tried to shoot defendant, but his pistol would not fire, and defendant fired three more shots, and after the fourth shot was fired the deceased fell to the ground, and defendant picked up the pistol of deceased and left; that no attempt to pull his gun was made by deceased until the defendant advanced upon him with his gun already drawn.

There was also evidence that after the homicide the defendant surrendered to an officer and delivered to him two pistols, one of which was out of order.

The evidence on the part of the defendant tends to show that after the defendant left the dipping vats with his cattle on the day of the homicide, and arrived near the gate of the pasture in question, and where the deceased was standing, the deceased drew his pistol and told defendant "that he had given him sass enough and he would shoot his head off," and shot his pistol right at the defendant, and the defendant, having gotten out his pistol, tried to shoot deceased; that deceased and defendant, facing each other, kept backing, and defendant, thinking that deceased was going to shoot him (defendant), in self-defense shot the deceased.

The defendant on his cross-examination denied that he had ever told the deceased that "he (defendant) would turn them in if he had to turn them in over the dead body of the deceased, or anything like it."

The state, in rebuttal, introduced the wife of the deceased, who testified that after the deceased was shot she accompanied him to Henryetta; that he said he was going to die. Thereupon she was asked "if deceased said anything about dipping. Did he say anything to you, make

any statement to you, of the things the defendant had said
to him?" The defendant objected, because such evidence
was not in rebuttal, but part of the case in chief. 'The court
overruled the objection, and the defendant excepted.
Thereupon the wife of deceased testified that the deceased
on the day he was shot and about 2 o'clock in the after-
noon told her "that the defendant told him (deceased) that
he was going to drive those cattle into that pasture if he
had to drive them over his (deceased's) dead body."

Among other instructions the court gave the jury the
following, to which the defendant excepted:

"No. 17. Gentlemen of the jury, you are instructed
that the law of this state is that, where a person armed
with a deadly weapon voluntarily enters into or attempts
to enter into a mutual combat with another for the pur-
pose and with the intent of slaying his adversary, or if
such person has reason to believe that such combat will
or may result in death or serious bodily injury to one or
the other of the persons so engaged therein, then the right
of self-defense will not arise in favor of such person so
voluntarily and unnecessarily entering such mutual com-
bat, no matter what extremity he may be reduced to during
such combat, unless before the fatal shot is fired he, in
good faith, withdraws or attempts to withdraw from the
conflict, and either by word or act made the fact known
to the deceased, and later thereafter continued to proceed
to give the defendant reasonable cause to believe that he
was in danger of being killed or receiving great bodily in-
jury at the hands of the deceased; and in this case, gen-
tlemen of the jury, if you find and believe from the evi-
dence beyond a reasonable doubt that the defendant Wil-
liam Crisp, on or about the time and at the place alleged in
the information, armed himself with a deadly weapon, to
wit, a pistol, and then and there proceeded to the place
where he was, and then and there made an assault upon

the deceased, in the manner and form and by the means alleged in the information, and thereupon shot and killed the deceased, then such killing would be murder or manslaughter according to the intent of the defendant at the time. If at the time of such assault, if any such is shown by the evidence, the defendant had the intent to kill the deceased, or do him great bodily harm, or had reason to believe such assault would probably result in the death or serious injury to himself or to the deceased, then such killing would be murder.

"On the other hand, if when the defendant so made the assault upon the deceased, if you believe from the evidence beyond a reasonable doubt that he did so make such assault, without any intention of killing deceased or inflicting serious bodily injury upon him, and in a conflict between the defendant and the deceased the defendant killed the deceased, then this offense would only be manslaughter in the first degree; and in this connection you are told that the line of demarcation between murder and manslaughter is in the character of the intention with which the defendant provoked or attempted to provoke the fatal difficulty, and this intention is to be gathered from all the facts and circumstances in evidence in the case."

The jury returned the following verdict:

"We, the jury drawn, impaneled, and sworn in the above-entitled cause, do, upon our oaths, find the defendant, William Crisp, guilty of manslaughter in the first degree, but we are unable to agree upon the punishment."

The defendant timely made a motion for a new trial, which the court overruled, and the defendant excepted.

The defendant complains that the court committed reversible error in permitting the state to introduce in rebuttal, upon the ground that the same was evidence in chief, the dying declaration of the deceased made to his

wife "that the defendant, told him (deceased) that he was going to drive those cattle into that pasture if he had to drive them over his (deceased's) dead body." This complaint is without merit. The defendant on his cross-examination denied making such statement as evidenced by the dying declaration, and hence such declaration of the deceased to his wife was strictly rebuttal evidence, and its admission as such was free from error.

The defendant insists that instruction No. 17 given the jury was prejudicial error. When this instruction is, as it must be, considered in connection with all other paragraphs of the instructions given, we think it correctly announces the law.

The defendant further complains that the verdict of the jury is not sufficiently supported by the evidence. With this complaint we do not agree. It is true that the evidence is in sharp conflict, but this conflict presents a question of fact exclusively within the province of the jury to determine, and this court, as held in an unbroken line of its decisions, is powerless to disturb such verdict, where, as in the instant case, there was evidence fully supporting the finding of the jury.

The defendant finally insists that the court committed reversible error in rendering judgment on the verdict, as the verdict returned was without authority of law, and the court not empowered to fix defendant's punishment. This contention is wholly without merit.

Section 5933, Revised Laws 1910, provides:

"In all cases of a verdict of conviction for any offense against any of the laws of the state of Oklahoma, the jury may, and shall upon the request of the defendant, assess and declare the punishment in their verdict within the lim-

tations fixed by law, and the court shall render a judgment according to such verdict except as hereinafter provided."

Section 5934, Revised Laws 1910, provides:

"Where the jury finds a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

In construing these sections, this court, in *Blair v. State,* 4 Okla. Cr. 359, 111 Pac. 1003, said:

"The jury having failed to agree upon the punishment to be inflicted, or at least not having declared the same in their verdict, it thereupon became the duty of the court under the statute to 'assess and declare the punishment and render judgment accordingly,' and the court committed no error in so doing."

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.

DOYLE, P. J., and MATSON, J., concur.