# JACK BLAGG v. STATE.

No. A-5719.  Opinion Filed March 26, 1927.
(254 Pac. 506.)

338

Tillman, Tillman & Pierson, for plaintiff in error.

George F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J., An indictment was returned by a grand jury in the district court of Osage county, charging John Brannon, Jack Blagg, and Walter O'Neil with the murder of Pomp Middlebrook, alleged to have been committed on the 23d day of September, 1923. A severance was granted. Upon his separate trial the jury returned a verdict finding the defendant Jack Blagg guilty of murder as charged in the indictment and fixing his punishment at imprisonment in the penitentiary for life at hard labor. In due course a motion for new trial was interposed in his behalf and denied. From the judgment duly pronounced in pursuance of the verdict he appeals.

This is a companion case to that of John Brannon v. State, wherein the conviction was affirmed by this court, 33 Okla. Cr. 206, 243 P. 259.

The following brief statement of material facts will be sufficient to make clear the contentions made: Pomp Middlebrook was killed at his filling station in the town of Cooper, some time after dark on the day alleged. The evidence on the part of the state showed that three men drove up to his place of business in a Ford coupe; that two of them got out and one remained in the coupe with the engine running; that as the other two went into the filling station shots were fired and the man in the Ford coupe drove off. A few minutes later two men came out of the filling station, and ran east from the town.

The state introduced a witness by the name of Pauline Prescott, who for some time had lived with the defendant Jack Blagg. She testified that Jack Blagg, John Brannon, and Walter O'Neil on the 23d day of September drove from Hominy to Shidler and there stopped at a place where Jack Blagg's mother was staying until about dusk that evening; when Blagg, Brannon and O'Neil left in the Ford coupe, saying that they were going to get some cold tire patches. She further testified that in about an hour and a half thereafter Blagg returned to this place in Shidler in the Ford coupe by himself, and about an hour later Brannon and O'Neil showed up there; that each told witness about the shooting of Middlebrook at his filling station in Cooper that evening, and that it was necessary for them to get out of there; that the four together with Blagg's mother left Shidler that night in the Ford coupe, drove nearly to the town of Hominy, where they stayed by the side of the road until daylight, when they drove into Hominy. This witness then detailed the whereabouts of herself and some of the others in the various parts of Oklahoma and Kansas until she returned to Osage county after hearing that her brother was in trouble and in jail in the city of Pawhuska. It is not necessary to detail the various trips that this witness testifies that these parties took. It is sufficient to state that she is corroborated as to their whereabouts and conduct by the testimony of several disinterested witnesses.

Carl Brewer testified that he lives in Cooper and heard the shots fired that killed Middlebrook; that he was talking with Ralph Holmes at the time on the street about 200 feet north of the filling station; that shortly before that he noticed three men sitting in a Ford coupe in front of the Sims restaurant, about 100 feet south of the filling station; that returning 20 or 30 minutes later he saw this Ford coupe with the three men in it about

20 feet north of the filling station; that he heard two shots, looked and saw the Ford coupe starting north, and it passed him with only the driver in it; then two men left the filling station, one went one way around the garage and one went the other, and both went east; that the Ford coupe went north to the first corner and turned east towards Webb City on the main road to Shidler.

From the foregoing summary it is plain that the verdict rendered is supported by substantial evidence.

The defense interposed was that of an alibi. The defendant denied any connection whatever with the commission of the homicide, and testified that for some days prior to the commission of the homicide, and for some days thereafter, he was employed as a cotton picker on the farm of R. W. White, southeast of Hominy. In this the defendant was corroborated by the testimony of White and Mr. and Mrs. Will Duncan, neighbors of White, who claimed to have seen the defendant on White's place, and to have worked with him from about the 9th or 10th of September, 1923, until about the first week of October. There are many material discrepancies between what each of these witnesses testified as to when the defendant came to White's place and as to who came with him. The defendant testified that he went from Three Sands to Bob White's place, and that nobody went with him, and that his mother and brother were there when he got there. R. W. White testified that he sent his father-in-law in a wagon after the defendant and his mother and brother, and that they were all brought there by his father-in-law, from the Boston Pool, at the same time, and were together picking cotton for him. Will Duncan testified that the defendant and his mother came first and about three weeks later the defendant's brother came.

Mrs. Duncan testified that she did not know when they came to White's place; that she first saw the defendant; he and his mother were both in the field together. While none of these witnesses agree on just how the defendant, his mother and brother got to White's place, who brought them, and what kind of conveyance they came in, it appears that all the witnesses do agree that the defendant and his mother and brother all left the place together in a Ford roadster.

We will consider the errors assigned in the order in which they appear in appellant's brief.

When the case was called for trial, the state filed a motion for continuance on the ground of absence of one Lloyd C. Bolock, who if present would testify that about 8:30 in the evening he went to the garage and filling station where Pomp Middlebrook was employed; that about 10 or 15 minutes after he arrived at the garage he and Middlebrook were sitting in the office when he heard some one say he wanted a can of cold patch; that Middlebrook rose up and asked whether he wanted the dollar or the 50 cents size, and the person said he wanted the 50 cents size; that he looked at the can and said, "I don't believe we want this," then said, "Put them up," and at the same time fired; that two shots were fired, and immediately after two persons left the building; that Middlebrook said "they shot me right through the head," and told him to go for a doctor and to tell the people on the street what had occurred; that Middlebrook died on the floor of the garage about 15 minutes after the shooting; that witness was not able to identify the man he saw in the garage, and only saw one man, but heard another man.

When the motion for continuance was presented, counsel for defendant offered in open court to admit

that the witness, if present, would testify to the facts stated in the motion. Whereupon the motion for continuance was overruled, and the case was called for trial. In the course of the trial, when the motion for continuance was offered in evidence, counsel for defendant objected to the reading of the motion to the jury, which objection was overruled, the court stating to the jury that the defendant in this case admitted that if this witness was present he would testify as set forth in the motion for continuance. It is urged that the admission as evidence of the motion, notwithstanding the consent thereto by defendant, was in contravention to article 2, § 20, Const., which, inter alia, provides that in all criminal prosecutions the accused shall have the right to "be confronted with the witnesses against him." In other words, that the defendant was thereby deprived of his right to meet the witness against him face to face, and that this right he could not waive.

Where a constitutional right in a criminal cause is solely for the benefit of the accused, and not jurisdictional, or in the nature of a personal privilege, the law is well settled that the accused may waive such right.

In the case of Starr v. State, 5 Okla. Cr. 440, 115 P. 356, the question now before us was fully considered. In the opinion we said:

"The provision of the Bill of Rights that the accused shall have the right to be confronted with the witnesses against him is merely declaratory of the common-law rule requiring an opportunity of cross-examination. Generally speaking, the constitutional provisions guaranteeing to every accused person in a criminal action certain rights may be separated into two classes: First, those in which the public generally, and as a community, is interested, as well as the accused, and which are jurisdictional as affecting the power of the court to try the cause; second, those more in the nature of privileges which are for the benefit of

the accused alone, and do not affect the general public. The former cannot be waived. Jurisdiction to try the cause is conferred by the law. Consent cannot confer jurisdiction, but the accused may waive a constitutional right or privilege designed for his protection, where no question of public policy is involved. The public as well as the accused have an interest in every criminal trial. The life and liberty of the citizen is a matter of supreme importance to the state, and it should not allow him to throw either away by a failure, intentional or otherwise, to take advantage of his constitutional safeguards. It will not do, however, to say that because the state has a peculiar interest in protecting the citizen accused of crime to the extent of his constitutional rights that he shall in no case be allowed to waive them, for in some cases it may be to his interest to waive them, and the denial of the right to do so would defeat the very object in view when the rights were given, and cause them to operate to the injury rather than to the benefit of the accused."

And see Littrell v. State, 22 Okla. Cr. 1, 209 P. 184.

Manifestly, the right of the accused to be confronted by the witness against him secured by the constitutional provision above referred to, falls within the class personal to the accused. It is a personal right, a personal privilege of which every defendant in a criminal action may avail himself. It is not jurisdictional, and it is just, that a waiver of the right by the accused of his own free will, without solicitation or persuasion, causing some action to be taken upon the faith of such waiver, that would not otherwise have been taken, should be binding upon him.

It follows from what has been said that the court did not err in admitting in evidence the verified motion for a continuance.

One of the grounds of the motion for new trial and assigned as error is that—

"The court erred in leaving the courtroom during the progress of the trial and losing control of the court."

To sustain this ground of the motion for new trial, the testimony of the defendant and one other witness tends to show that during the argument of defendant's counsel, the presiding judge left the bench and went into an adjoining room and was gone for about half a minute. Whereupon the presiding judge made the following statement:

"The door of my chambers was open. It might be possible that I took a book off my desk, which is some three or four feet from the door. If I did step in that room during the progress of the argument in this case, it would not exceed ten or fifteen seconds of time, and I would not have been more than ten or fifteen feet away from counsel arguing the case and not to exceed three feet from the jury."

In the case of Allen v. State, 13 Okla. Cr. 533, 165 P. 745, L. R. A. 1917E, 1085, we said:

"In many cases this court has held that it is the duty of the presiding judge at criminal trials to be present during each and every stage of the proceedings before him, and when the record affirmatively discloses that he lost control of the proceedings by reason of his absence from the bench during the progress of the trial, a judgment of conviction will be reversed."

The record in this case does not sustain the contention that the trial judge was absent from the courtroom and had lost control of the proceedings. It does show that at no time did the presiding judge lose control of the proceedings, but was in hearing of anything that occurred and was in a position to rule on any matter that might have arisen at the time he

stepped into his chambers. Error will not be presumed, but the record must affirmatively show that the error complained of was of a character sufficient to show that appellant was not given a fair trial.

It is also contended that the trial court erred in permitting the indictment to be amended. We deem it sufficient to say that it nowhere appears in the record that the indictment was ever amended or permitted to be amended. It follows that the burden resting upon the defendant to show by the record that the court erred in this respect has not been met.

It is also contended that the defendant was not served with a copy of the indictment as amended. This question was first raised when the defendant testified in support of his motion for a new trial. There is no other showing that the defendant was not served with a copy of the indictment, or that he ever made a demand for a copy of the same previous to the trial. The record therefore not only fails to support this assignment of error, but shows conclusively that the defendant waived his privilege to have a copy of the indictment furnished to him. Blair v. State, 4 Okla. Cr. 359. 111 P. 1007; Stouse v. State, 6 Okla. Cr. 415; 119 P. 271; Franklin v. State, 9 Okla. Cr. 178, 131 P. 183.

The last assignment urged is that the evidence is not sufficient to sustain the verdict. In cases of this kind the effect which the evidence shall have as tending to establish the guilt of the defendant is for the jury. If they find it insufficient to establish guilt, there is no power in the court to set aside their verdict, though the trial judge might be convinced that the verdict was against, not only the weight of the evidence, but against all the evidence. On the other hand, if there be evidence which fairly tends to prove the guilt of the de-

fendant, and the jury find him guilty, the trial court cannot properly set aside such verdict, because he may entertain doubts as to its sufficiency to establish such guilt. Ordinarily the decision of the trial judge upon the question of granting a new trial on the ground that the evidence is insufficient to support the verdict is held conclusive upon this court, where the record shows that it is supported by substantial evidence.

In conclusion we simply add that an examination of the record has revealed nothing that gives us the right to say that the interests of justice require a new trial.

The judgment appealed from is therefore affirmed.

EDWARDS and DAVENPORT, JJ., concur.