## FRED WHEELER v. STATE.

No. A-10782.    Nov. 26, 1947.
(187 P. 2d 266.)

Garrett & Harlan, of Mangum, and L. A. Pelley, of Altus, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

JONES, J.  The defendant, Fred Wheeler, was charged in the district court of Jackson county with the crime of rape in the first degree, was tried, convicted, and sentenced to serve a term of 15 years imprisonment in the State Penitentiary, and has appealed.

It is contended that the court erred in refusing to sustain the motion of defendant for an instructed verdict of not guilty on the ground that the material evidence of the state is contradictory, inconsistent and unreasonable and bears upon its face inherent evidence of improbability; counsel citing in support of his contention the rule of law laid down in Davidson v. State, 57 Okla. Cr. 188, 46 P. 2d 572; Williams v. State, 61 Okla. Cr. 396, 68 P. 2d 530.

Naomi Kuykendall, the complainant, testified that she was living in Altus on August 7, 1945. That shortly after dark on that date she had started to the church to which she and her family belonged, but had seen a girl acquaintance on Main street in Altus and had stopped to visit with her. That shortly thereafter she started up the street on her way to church and saw the defendant together with Helen Tucker and Kenneth Langford in an automobile. That as she was passing the automobile, Helen Tucker called her over to the car. That she visited with them for a few minutes and then Helen asked her to get in the car and drive with them down to her aunt's house. That she agreed to go if they would get her back in time for church. That they went to Helen's aunt's house, picked up the aunt and took her to another place where the aunt left the car. That the defendant then drove the automobile south of Griderville and stopped the car there at the side of the road. That Helen Tucker and Kenneth Langford got out of the car and started walking back up the road. That Helen and Kenneth were gone about 40 minutes. That shortly after they left, the defendant started making advances toward her. He started putting his arm around her and tried to kiss her. That she shoved him away and told him to quit. That he started arguing with her and tried to persuade her into letting him go ahead. That she started to get out of the car, but he grabbed her and scuffled with her and would not let her leave. That the defendant kept wrestling with her for several minutes and choking her. That finally he tore her panties off of her. That she kept fighting him and telling him to leave her alone, but that he had overpowered her and had sexual intercourse with her there in the front seat of the automobile. She further testified that she hollered for help, but no one came to help her. That she then put her panties

back on. That in a few minutes Kenneth and Helen returned and she was taken to Altus where she got a taxicab, went immediately to her home and told her father and mother what had occurred. Her 15th birthday was the day of this alleged occurrence.

On cross-examination, she testified that they drove around town about 30 minutes before driving out to the country. She denied that the car was moved from the place where it originally stopped until all the parties got into it to return to Altus. She denied that she put her arm around defendant and kissed him while they were sitting in the seat before the alleged rape occurred and said she did everything in her power to resist his assault. She admitted that she did not tell Helen and Kenneth what had occurred when they returned to the car, but stated that she did not say anything at all after they arrived, even on the ride back to town, and gave as an explanation for not saying anything to them the fact that she had already "hollered and screamed and they would not help me". She had not met either the defendant or Kenneth Langford before the night of this occurrence, but had become acquainted with Helen Tucker when the witness had worked some at the laundry where Helen was employed.

Mrs. C. R. Kuykendall testified that she was the mother of Naomi. That on the night of August 7, 1945, Naomi left her home a little after 8 to go to church. That she next saw her about 10 o'clock. She and Mr. Kuykendall had gone to bed. That Naomi told them she had been raped. That her clothing was torn and there was blood on her dress, slip and panties.

On cross-examination Mrs. Kuykendall testified that she gave Naomi a douche with a fountain syringe using

plain water with a Lysol mixture. Early the next morning she notified the officers what had occurred. She examined her daughter's privates and they were swollen, bruised and bleeding. She took her to Dr. J. P. Irby for examination and treatment.

C. R. Kuykendall testified to substantially the same facts that were related by Mrs. C. R. Kuykendall.

Dr. J. P. Irby testified that the parents of Naomi Kuykendall brought her to his office for examination the next day after the alleged attack occurred. His testimony as regards her condition was:

"A. I found that she was—the external portion of the female organs were swollen, discolored; there was blood oozing from the vaginal tract, coming from up inside. There was slight scratches or abrasions around the opening; the hymen, commonly known as the maidenhead, had been torn in two places, and in examining her, as I remember, I opened the tear again. It bled from one of the places where it had been torn. The swelling was rather intense and I couldn't make a complete examination because she couldn't stand the pain. Q. Now could you insert your finger into her private parts, Doctor, at that time without causing her excruciating pain? A. I could have by exerting considerable force and causing pain but I chose not to because it was unnecessary."

The Doctor expressed the opinion that there had been a penetration of her private organs probably by the act of sexual intercourse. The bleeding which he found was caused by the rupture of the hymen and the abrasions which he found could have been caused by various instrumentalities, but that the common cause was an act of sexual intercourse.

On re-direct examination, he testified that the condition which he found in examination of the prosecutrix indicated that this was her first sexual connection.

A. C. Boaldin, sheriff of Jackson county, testified that in a talk with the defendant the day of his arrest, the defendant said he was 25 years of age.

The evidence on behalf of defendant was as follows: Helen Tucker, age 17, testified that she was with Kenneth Langford and Fred Wheeler earlier in the evening of August 7, 1945. She had a date with Kenneth Langford and the defendant, Fred Wheeler, was wanting her to get him a date with some girl. That they were parked in defendant's car in front of Felkner's Cafe when she saw Naomi Kuykendall walking past. She called to Naomi and when she came over to the car she invited her to go riding with them. That Naomi said she would go, but she would have to be back by the time church was out around 11 o'clock. That they then went over to her aunt's and got some of her clothes as she (the witness) was fixing to go back to her home in Nebraska. That they then drove out west of town near a place called Griderville and stopped the car. That it was warm in the car, so she and Kenneth got out of the car and walked east down the road. That they walked down road about 25 or 30 yards. That she and Kenneth were gone about 30 minutes. That they came back to the car once to see if the defendant and Naomi were ready to go, but that Fred said that they weren't ready to go. She did not hear any hollering nor any cry for help. Naomi did not make any complaint to her about what was going on. That when they came up behind the car she did not hear Naomi making any protest to the defendant concerning what was being done. When she returned to the car the first time the defendant was under the wheel and

Naomi· was sitting by him. That when they first stopped, the prosecuting witness stated that she had better go home as she had to meet her brother and go home with him after church. That she saw Fred with his arm around her while the car was stopped. That Naomi did not say anything on the return to town. That when she got out of the car in front of the Plaza Theatre she did not say anything and she did not make any complaint about anything that had occurred.

On cross-examination, Helen Tucker testified that when the defendant saw Naomi approaching before the witness called her to the car, the defendant asked the witness if she knew her and she told him Naomi wasn't but 15 and he had better leave her alone. When asked as to what she and Kenneth were doing down the road she stated, "Haven't you got me up here to find out what happened to her". She and Kenneth were gone from the car about 30 minutes before they came back the first time, they then went back down the road a little ways before coming back the second time and leaving. When asked if she wasn't too busy with Kenneth to pay attention to what was going on at the car she said she was not very busy. When asked concerning a conversation with the county attorney in the presence of the sheriff next day concerning what she and Kenneth were doing, she replied that what she was talking about was what occurred when they went out again after they had brought Naomi back to town. She stated that she, Kenneth, the defendant, another man and two more girls went out on another trip after Naomi had gotten out, and that on the way they were talking to the defendant about Naomi and he said if she got pregnant it would be a trip to the license bureau to get a marriage license.

Kenneth Langford testified that he and the defendant lived at Martha, Okla. That he and the defendant came to Altus on August 7, 1945. He had a date with Helen Tucker. Later Naomi Kuykendall came by and got in the car with them. The defendant wanted to drive to Mangum but Naomi said she did not have time as she had to meet her brother at 11 o'clock. Fred then said that since they did not have much time they would just drive out to the country and everybody agreed. They drove a short ways out of town and then stopped the car. He and Helen got out and went about 25 yards east of the car. His testimony from that point is substantially the same as that of Helen Tucker. He further testified that he did not see anything wrong with Naomi's clothing and did not hear any complaint from her.

On cross-examination, he testified that when he and defendant came to Altus he had a date with Helen Tucker and defendant was supposed to have a date with a girl who worked in a cafe, by the name of Claudia Baker. That they drove to Claudia Baker's house, but she was not at home. That they then parked on the main street of Altus looking for a date for Fred when Naomi Kuykendall came along. Naomi did not say anything but just sat there as they were driving back to town.

The defendant testified that he was reared near Martha. That at one time he had worked for the Agricultural Department in Oklahoma City. That he met the prosecuting witness for the first time the night of August 7, 1945. Kenneth and Helen got into the back seat of his club coupe and he and Naomi sat in the front seat. After driving around over town a while Kenneth looked at his watch and saw it was a little past 10 o'clock. Naomi said she had to meet her brother at 11 o'clock. They then drove out

about two miles south and west of Altus and parked. Kenneth and Helen got out of the car and walked back east. After they were gone he put his arm around Naomi and kissed her. Naomi had both of her arms around his neck. After a few minutes Kenneth and Helen returned and Kenneth moved the car over to the right toward a ditch so that they would be completely out of the road. Helen and Kenneth then left the second time. The defendant then testified:

"A. I put my arm around her; she put her left arm around my neck and her right arm around my body and I kissed her and run my hand up her leg under her dress. And she didn't make any resistance, no discussion at that time what I was doing or what she was going to do.   Q. So she didn't resist?   A. I didn't know what to think other than she was. just what she was out there for. So I run my hand inside her pants and she raised—put her feet against the floor board, raised her body from the seat and pulled her pants down past the buttocks.   Q. You pulled her pants down how far?   A. Past the buttocks, down to about the bend of her legs. And she sat back down. Q. She raised up to let you pull them down?   A. Yes, sir. And then I run my hand up and inserted my finger, and I found she was very small. And she didn't act as if I was bruising her or hurting her in any way, but I knew she was very small. And when I discovered that I said, 'I couldn't have intercourse with you if I wanted to.' And she said, 'You are anyhow'. And I said 'I am not'."

He then denied that he had sexual intercourse with the prosecuting witness and gave as his reasons the following testimony:

"A. First, she was much too small, much too young. She was not built right for that for me. And another thing, not exactly a proper place in the front seat of a five-passenger coupe."

He then testified that he did not know what caused her to bleed unless his finger nails were long and he might have scratched her. But he admitted that he saw a little blood on his car seat after Naomi had gone.

On cross-examination, he testified that Naomi was perfectly willing for him to make all the advances which he made and that she was perfectly willing for him to insert his finger in her privates. He further testified that he had never been married.

Dr. John R. Reid was called as a witness on behalf of defendant. He was asked whether he had made an examination of the defendant's automobile and upon receiving an affirmative reply was asked whether it would be possible for the defendant to have accomplished an act of sexual intercourse by force and violence against the will of Naomi Kuykendall in the front seat of that car with the doors closed. The trial court sustained an objection to that testimony and the witness was excused.

Naomi Kuykendall was recalled as a witness and denied that she helped pull her panties down as testified to by defendant, and denied that she had assented to his inserting his finger in her privates and further denied that was all that he did, but stated again that he inserted his male organ in her privates and had sexual intercourse with her.

We have given a full resume of all the proof on behalf of the state and defendant. In the cases relied upon by the defendant the proof on behalf of the state was contradictory, inconsistent, and bore upon its face inherent evidence of improbability. The instant case presents no analogous situation. If the testimony of the prosecuting witness is to be believed, the defendant is guilty of the

crime of rape. If the jury had believed the testimony of defendant, no rape was committed. The strongest argument in support of defendant's contention that no rape was committed is the testimony of Helen Tucker and Kenneth Langford that no outcry was made and no complaint was made to them after they returned to the car. However, the prosecuting witness testified that she did make an outcry but that Helen and Kenneth did not come to help her. The prosecutrix did go immediately home after the alleged attack occurred and related the incident to her father and mother. Her torn panties, bloody garments, and her physical condition, all corroborated her story. The testimony of the examining physician also corroborated the evidence of the prosecutrix. The evidence raised an issue of fact for the determination of the jury, and under such circumstances this court will not interfere with the verdict that was rendered.

It is urged that the court erred in refusing to give defendant's requested instruction as follows:

"Defendant's Requested Instruction No. One

"Gentlemen of the Jury:

"You have been instructed that Rape in the first degree is the accomplishment of sexual intercourse by a male person, with a female person, either by use of such force and violence, as to overcome resistance or by use of threats of force and harm, as to overcome such resistance through fear of bodily harm, and without the consent of the female.

"In this connection you may consider the evidence before you concerning the failure of the prosecutrix to make outcry or complaint, when she had opportunity to do so, if you find such evidence of such failure; and in the event you find that from the evidence offered she did not make outcry or complaint, you will consider the same in deter-

mining whether or not prosecutrix consented to the actions of the defendant herein;

"Mere failure to make outcry or complaint is not conclusive against the prosecutrix in the consideration of her evidence in this case, but, if you find that she did not make outcry, or did not complain immediately to others to whom she might have made complaint, such failure should be reasonably or sufficiently explained to your satisfaction as jurors, in your consideration of this case."

No authority is cited to support the contention of the defendant that the last two paragraphs of this instruction was proper. After a consideration of this instruction, it is our opinion that the court would have acted erroneously had he given such instruction. The vice of the instruction is that it assumes a state of facts not in evidence and is a comment upon the weight of the evidence.

It is also contended that the court erred in requiring the defendant to proceed to trial without having served on him a list of the names of the witnesses together with their post-office addresses to be used against him in chief at least two days before the trial.

When the case was called for trial, counsel for the defendant objected to making an announcement for the reason that the defendant had not been furnished with a list of witnesses to be used by the state in its case in chief at least two days before the case was called for trial as provided by article 2, sec. 20, of the Constitution of the State of Oklahoma. The state then submitted to the court a list of witnesses to be used in chief against defendant together with their post-office addresses which had been filed in the office of the court clerk. This instrument shows that the list of witnesses was served on counsel for defendant on February 9, 1946, which was nine days before the case was set for trial. The record further shows that on Septem-

ber 11, 1945, the defendant appeared in person and with his counsel in open court for arraignment upon the information filed against him. That he waived reading of the information and filed a demurrer thereto which was overruled and thereupon the defendant entered his plea of not guilty. Endorsed on the information at the time of the arraignment of the defendant were the names of all the witnesses whose names appeared on the list of witnesses served on counsel for defendant on February 9, 1946.

The name of Naomi Kuykendall was not on the list of witnesses and when she was called as a witness, counsel objected to her testifying for the reason that her name was not endorsed on the information and her name was not on the list of witnesses which were furnished to counsel for defendant.

That part of article 2, sec. 20, of the Oklahoma Constitution, here involved reads:

"He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their post-office addresses."

In the case of Rich et al. v. State, 51 Okla. Cr. 418, 1 P. 2d 805, this court had occasion to discuss at length the constitutional provision here involved in its application to a state of facts very similar to the facts in the instant case. The law of that case as shown by the syllabus reads:

"The law does not prescribe the manner in which the names of the witnesses in a capital case shall be furnished the defendant. If it be made to appear to the satisfaction

of the trial court that such names were furnished the appellant at least two days before the case was called for trial, the manner in which the names were so furnished becomes immaterial.

"Where the defendant is arraigned in open court more than two days before the trial and waives the reading of the information and enters his plea of not guilty, and where defendant's counsel in the presence of defendant, upon order of the court, is furnished a copy of the information with a list of the witnesses to be used in chief by the state indorsed thereon, such service of the list of witnesses is sufficient to meet the requirements of article 2, § 20, of the Constitution."

In the body of the opinion it is stated:

"It is contended by defendants that the fact that they were present in open court when a copy of the information and list of witnesses was served on their counsel is insufficient, as the Constitution requires that the list shall be served upon them personally.

"That part of article 2, § 20, of the Constitution, pertinent to the issues here, is as follows:

" '* * * And in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their post-office addresses.'

"In Franklin v. State, 9 Okla. Cr. 178, 131 P. 183, this court said:

" 'The defendant in a capital case may waive his constitutional right to be furnished with a list of the witnesses that will be called in chief to prove the allegations of the indictment or information, together with their post-office addresses, at least two days before the case is called for trial.'

"In Pollock v. State, 26 Okla. Cr. 196, 223 P. 210, this court said:

" 'The service of a list of witnesses upon defendant to be used by the state in chief is a matter which the defendant can waive and which he does waive if no timely objection is interposed.'

"In Manning v. State, 7 Okla. Cr. [367], 368, 123 P. 1029, this court said:

" 'The law does not prescribe the manner in which the names of witnesses in a capital case shall be furnished the defendant. If it be made to appear to the satisfaction of the trial court that such names were furnished the appellant at least two days before the case was called for trial, the manner in which the names were so furnished becomes immaterial.' State v. Frisbee, 8 Okla. Cr. 406, 127 P. 1091; Franklin v. State, 9 Okla. Cr. 178, 131 P. 183; Goben v. State, 20 Okla. Cr. 220, 201 P. 812; Pollock v. State, 26 Okla. Cr. 196, 223 P. 210.

"Where at the time of arraignment, and more than two days before the trial in a capital case, upon the order of the court the defendant's counsel, in the presence of defendants, is given a copy of the information upon which the names of the witnesses to be used by the state in chief are indorsed, this service in open court is sufficient service upon the defendants to meet the requirements of article 2, § 20, of the Constitution."

The question as to whether the court erred in permitting Naomi Kuykendall, the prosecuting witness, to testify over the objection of counsel for defendant when it was shown that her name was not endorsed on the information and was not on the list of witnesses furnished to counsel for defendant, presents a question of first impression in this court. The information alleges that the assault was made upon Naomi Kuykendall. The preliminary complaint likewise named Naomi Kuykendall as the complaining witness and the person upon whom the assault was

allegedly made. Naomi testified at the preliminary examination against the accused and was cross-examined by his counsel. The state could not possibly make a case of rape against the accused without the testimony of the person upon whom it is alleged the rape was committed. The purpose of the constitutional provision requiring that defendant be furnished with the names of the witnesses to be used in chief against him, is for the purpose of informing the defendant what evidence he may reasonably expect to be offered against him. Where the name of the person upon whom the attack is alleged to have been made is set forth in the information, it would appear that such fact conveys the information to the accused that the state would rely upon her testimony in chief in order to convict the defendant.

In the case of Denton v. State, 58 Okla. Cr. 275, 53 P. 2d 1136, 1137, this court in discussing the constitutional provision stated:

"A narrow, technical rule of construction is not applied to this provision of the Constitution. The purpose of this requirement is to enable a defendant to know what he may be expected to meet and to prepare for trial. When a defendant has this information in due time, the requirements of the Constitution have been met."

Although apparently this court has never had occasion to pass upon the question as to whether the person upon whom an assault is alleged to have been made should also have his or her name endorsed on the information before he or she may be used as a witness, it has had occasion to pass upon cases where the situation is analogous. This court has held that the name of a codefendant whose name appears upon the face of the information does not have to be endorsed on the list of witnesses and that said

codefendant may be used as witness in chief against the defendant.

In the case of Cloud v. State, 41 Okla. Cr. 395, 273 P. 1012, this court held:

"Every defendant jointly indicted or informed against is charged, under the statute, with notice that the state may, if it so desires, use a codefendant as a witness against him. The appearance of the name of a witness, on the face of the information as a codefendant, answers every requirement of the statute, that the name of the witness be indorsed on the information before trial." See also Cudjoe v. State, 12 Okla. Cr. 246, 154 P. 500, L. R. A. 1916F, 1251; Varner v. State, 42 Okla. Cr. 42, 274 P. 43.

It is our conclusion that the insertion of the name of the prosecuting witness in the information as the person upon whom the alleged rape was committed, coupled with the further fact that she had prior thereto testified at the preliminary hearing and was cross-examined by counsel for defendant, was a sufficient compliance with the constitutional provision so that it can be said that her name had been furnished to the defendant as one of the witnesses to be used by the state in its case in chief against him in the trial.

We have carefully examined the record in reviewing the assigned errors and to search for any errors which might be said to have kept defendant from having a fair and impartial trial and have found none. We have found no extenuating circumstances in defendant's favor. His friend and companion, who testified on his behalf at the trial, stated that she told the defendant when he first inquired about the prosecutrix as he saw her walking up the street that she was only 15 years of age and that he should leave her alone. The defendant refused to heed this admonition, but proceeded to make a rapacious attack upon her.

The judgment and sentence of the district court of Jackson county is accordingly affirmed.

BAREFOOT, P. J., and BRETT, J., concur.